50 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LEXINGTON INSURANCE COMPANY, Plaintiff-Appellant,
v.
Kenneth W. DEVANEY, Defendant-Appellee.
 No. 93-16284
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1995.
Decided March 9, 1995.
 
 Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lexington Insurance Company appeals the district court's entry of summary judgment against it. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 
 3
 * Lexington argues that the district court erred when it determined, as a matter of law, that Lexington had not given sufficient notice to Summa of the new exclusion to the D & O policy excluding coverage for claims related to or arising out of the insolvency of the policyholder.
 
 
 4
 Under Allstate Co. v. Fibus, 855 F.2d 660 (9th Cir.1988), unless the notice of the reduction in coverage is "conspicuous, plain and clear," the "insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued." Id. at 663 (citing Fields v. Blue Shield of Cal., 209 Cal.Rptr. 781, 785-86 (Cal.Ct.App.1985)). If notice of a new exclusion is inadequate, the exclusion is ineffective. Davis v. United Services Auto Ass'n, 273 Cal.Rptr. 224, 231 (Cal.Ct.App.1990).
 
 
 5
 In Fibus, the court held that a paragraph printed on the first page of an eight-page "Amendatory Endorsement" was insufficiently conspicuous to provide the requisite notice to the policyholder. The endorsement set forth the paragraph of the policy that had been changed, but there was no conspicuous warning that there had been a reduction in coverage. Fibus, 855 F.2d at 663. Here, Lexington relies on the fact that its broker set out the new exclusion on a separate endorsement where it was one of four paragraphs. However, there is no basis for inferring that the endorsement sheet was attached to the front of the papers sent to Summa, or that it was otherwise in a conspicuous location. Although the cover letter referred to "changes" and the endorsement page used the term "amended," no document explicitly states that there had been a "reduction" or "diminishment" of coverage, or words of similar import. Further, by the time the letter had been sent, John Powel, the broker for Lexington, had spoken three times by telephone with Thomas Pace of Summa. During these conversations Pace informed Powel that Summa was in bankruptcy. Nonetheless, Powel never mentioned the bankruptcy exclusion to Pace. Finally, in light of the telephone conversations, the significant increase in the policy premium would reasonably have been understood as relating to the increased risk stemming from Summa's bankruptcy. In light of these circumstances, we cannot say that the district court erred in holding that Fibus controls and that the notice of coverage reduction was not plain, clear and conspicuous as a matter of law.
 
 II
 
 6
 Lexington next contends that, even if notice of the insolvency exclusion were inadequate, Devaney is equitably estopped from asserting lack of notice because it detrimentally relied on Barg's failure to assert earlier the invalidity of the insolvency exclusion on the basis of inadequate notice. Lexington claims that, had it known of this argument, it might have acceded to Devaney's original $1.0 million settlement offer or negotiated a lower amount, while reserving its right to contest coverage later. Lexington also argues that it can assert equitable estoppel against Devaney since, as Barg's assignee, Devaney stands in Barg's shoes and is subject to any defenses that could have been raised against the assignor. Royal Bank Export Fin. Co. v. Bestways Distrib. Co., 280 Cal.Rptr. 355, 357 (Cal.Ct.App.1991).
 
 
 7
 We disagree. Equitable estoppel applies when (1) the party to be estopped knows the facts, (2) the party either intends its act or omission to be acted upon, or acts in a manner such that the party asserting estoppel has a right to believe such intent was present, (3) the party asserting estoppel must be unaware of the true facts, and (4) the party asserting estoppel relies on the other party's conduct to its detriment. Lusardi Constr. Co. v. Aubry, 4 Cal.Rptr.2d 837, 848 (Cal.1992). Nothing in the record shows that Barg actually knew that he had a notice argument against the policy's insolvency exclusion. It is not enough that he knew of the exclusion itself and that Lexington was asserting it as a defense to coverage. Nor does anything in the record indicate that Lexington relied on Barg's failure to raise the inadequate notice issue to its detriment. Neither is there any showing that active steps were taken or that improper conduct was engaged in to induce reliance. As proof of essential elements is missing, summary judgment was properly granted.
 
 III
 
 8
 Lexington next argues that the district court erred in determining, as a matter of law, that it breached an obligation to Summa or Barg, and thus erred in holding it liable for the full $5 million judgment despite the D & O policy limit of $1.0 million.
 
 
 9
 Consolidated American Ins. v. Mike Soper Marine, 951 F.2d 186 (9th Cir.1991), applying California law, is controlling. In that case, the insurance company refused to defend the policyholder and refused reasonable settlement offers within policy limits. The policyholder entered into a stipulated default judgment, and in exchange for a covenant not to execute by the plaintiff, the policyholder assigned all of his rights against the insurance company to the plaintiff. This court held:
 
 
 10
 California law mandates that when an insurer fails to accept a reasonable settlement offer within policy limits because it "believes the policy does not provide coverage [it] assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits." This duty does not require, however, a liability insurer to accept the settlement offer when there is no risk to the insured.
 
 
 11
 Consolidated American, 951 F.2d at 190 (citations omitted) (quoting Samson v. Transamerica Ins. Co., 178 Cal.Rptr. 343, 353 (Cal.1981)). "[A]n insurer's good faith, though erroneous, belief in noncoverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer." Samson, 178 Cal.Rptr. at 353-54 (internal quotation marks omitted).
 
 
 12
 Lexington correctly points out that it had no duty to defend, but only to reimburse defense costs as part of the loss under the policy. However, under California law a breach of the duty to pay the costs of defense under a D & O policy will be treated much the same as a breach of the duty to defend. Xebec Dev. Partners, Ltd. v. National Union Fire Ins. Co., 15 Cal.Rptr.2d 726, 739 (Cal.Ct.App.1993). Lexington also refused to indemnify or settle within policy limits. Lexington told Summa that "there is no coverage afforded to any of the insureds" and that it "is inconceivable given the allegations of the complaint that there would be coverage under these policies." Lexington's refusal of coverage caused Barg to take steps to protect himself. "When the insurer exposes its policyholder to the sharp thrust of personal liability by breaching its obligations, the insured need not indulge in financial masochism." Samson, 178 Cal.Rptr. at 356 (holding that a policyholder breaches no duty by assigning rights against the insurance company in return for covenant not to execute).
 
 
 13
 On two occasions Lexington declined to settle for $1.0 million, a figure within policy limits. Devaney's second $1.0 million settlement offer came immediately after a judgment for $5.0 million had been entered in his favor against Barg. It is a breach of the insurance company's duty as a matter of law to refuse an offer to settle within the policy limits once a judgment has been entered in excess of the offer. R.W. Beck & Assoc. v. City and Borough of Sitka, 27 F.3d 1475, 1486 (9th Cir.1994). There is no evidence that the settlement offer was unreasonable. An expert estimated Carolyn Devaney's lifetime cost of care at $5.0 million; Lexington does not contest that. Lexington admits that Devaney could have recovered up to $1.05 million from Summa during Carolyn's lifetime; while it intimates that some of that amount is exhausted, it admits there is no evidence of the degree of exhaustion. Given that Devaney's settlement offer was well below an undisputed estimate of medical costs and within the limits of Summa's coverage, there is no genuine issue of fact as to whether the offer to settle for the $1.0 million policy limit was reasonable.
 
 
 14
 Lexington also argues that Barg never submitted a claim for reimbursement of defense costs, and thus the district court erred in finding as a matter of law that Lexington breached a duty to pay defense costs. That argument is unavailing. In Samson, the California Supreme Court rejected as "sheer sophistry" the insurance company's claim that, although it denied coverage when a claim was presented, it did not breach its duty to defend because the policyholder never demanded a defense as such. Samson, 178 Cal.Rptr. at 355.
 
 IV
 
 15
 Lexington contends that genuine issues of fact remain concerning the amount of Barg's liability to Devaney, and that it is not bound by the judgment entered in state court against Barg because the trial was uncontested, collusive, and was not an "actual trial" but tantamount to a settlement or stipulated judgment.[1] Thus, Lexington argues, the damage determination by the state court is at most presumptive evidence of the amount of Devaney's claim against it, evidence which it was entitled to rebut with contrary evidence suggesting that the $5.0 million figure was incorrect. We agree with the district court that the trial, although uncontested, was not a sham but an "actual" trial, and that the determination of damages was binding on Lexington.
 
 
 16
 Samson v. Transamerica Insurance Co., 178 Cal.Rptr. 343 (Cal.1981), like this case, involved an uncontested trial, an assignment of policyholder rights to the plaintiff, a covenant not to execute against the policyholder, and an attempt by the plaintiff to compromise with the insurance company for an amount within policy limits after the underlying judgment was entered. The California Supreme Court held the judgment in the uncontested action binding in full on the insurance company in the later coverage action, even though it was in excess of policy limits. Samson, 178 Cal.Rptr. at 357.
 
 
 17
 Each of the Court of Appeal decisions upon which Lexington relies is distinguishable. In Xebec Development Partners, Ltd. v. National Union Fire Insurance Co., 15 Cal.Rptr.2d 726, 745 (Cal.Ct.App.1993), the court considered the preclusive effect of a stipulated judgment in an underlying arbitration proceeding. The policyholders and plaintiffs submitted a proposed judgment to the arbitrators that included a proposed calculation of damages. Xebec, however, noted "a significant distinction between the default judgment in [Clemmer v. Hartford Ins. Co., 151 Cal.Rptr. 285 (Cal.1979) ] and the stipulated judgment in this case," and agreed "that the default proving-up proceeding preserve[s] a semblance of independent adjudication under court supervision which is wholly lacking in this case." Xebec, 15 Cal.Rptr. at 747. Accord National Union Fire Ins. Co. v. Lynette C., 33 Cal.Rptr.2d 496, 506 (Cal.Ct.App.1994) (uncontested judgment, unlike stipulated judgment, is "actual trial" and has preclusive effect). Thus, by its own terms, Xebec does not apply here, where Devaney was required to prove liability and damages in the Superior Court. Similarly, Smith v. State Farm Mutual Automobile Insurance Co., 7 Cal.Rptr.2d 131, 134 (Cal.Ct.App.1992), involved a stipulated judgment, and Doser v. Middlesex Mutual Insurance Co., 162 Cal.Rptr. 115 (Cal.Ct.App.1980), a pre-Samson case, involved damages fixed via settlement. See also Glenbrook Homeowners Ass'n v. Scottsdale Ins. Co., 858 F.Supp. 986, 988 (N.D.Cal.1994) (holding that an uncontested trial, unlike stipulated judgment, is a "conclusive judicial determination" and thus supports assignment of action against insurance company under Cal.Ins.Code Sec. 790.03(h)).
 
 
 18
 In Lipson v. Jordache Enterprises, Inc., 11 Cal.Rptr.2d 271 (Cal.Ct.App.1992), an insurance company had repeatedly refused to defend. On the eve of trial, the plaintiff submitted a second amended complaint. The parties agreed to trial on an expedited basis. When the insurance company received the second amended complaint, it agreed to defend, but the trial had already occurred. The insurance company then unsuccessfully moved the trial court to vacate and set aside the judgment, but the Court of Appeal reversed. Here, Lexington never agreed to defend and was always on notice of when the trial would take place, unlike the insurer in Lipson. Further in Lipson, it appeared that "something was amiss" because of a "last minute stipulation to amend the complaint with new causes of action arguably covered by the policy." Lipson, 11 Cal.Rptr.2d at 275. Thus, the Lipson court found that "the trial was substituted for a stipulated judgment, in order to provide unchallengeable findings" in a later insurance action. Id. Nor are we persuaded by Span, Inc. v. Associated International Insurance Co., 277 Cal.Rptr. 828 (Cal.Ct.App.1991), in which the Court of Appeal held that there existed a triable issue of fact as to whether the judgment obtained by the plaintiff against the policyholder was collusive because the policyholder not only agreed not to contest the trial, but stipulated to liability and to the reasonableness and necessity of the plaintiff's medical bills. Id. at 831.
 
 
 19
 In any event, to the extent that the Courts of Appeal are in conflict on this issue, we follow the decision of the California Supreme Court in Samson as the best evidence of how that court would interpret California law in this case. In addition to holding that the damages determined in an uncontested trial are binding on a breaching insurance company, Samson also holds that notification to the insurance company of a settlement agreement or trial date, which no one disputes was given in this case, "decisively refute[s] ... claims of collusion and bad faith." Samson 178 Cal.Rptr. at 356-57 n. 13.[2]
 
 
 20
 We conclude that Lexington is bound by the damage figure determined in the uncontested trial between Devaney and its policyholders, Summa and Barg. "[A]n insurance company that decides to reject [an offer to settle within its policy limits after a larger judgment has already been entered] does so at its own risk." Id. at 357 n. 14.
 
 V
 
 21
 Lexington finally argues that the trial court erred in holding it liable to Devaney for accrued interest on the $5 million judgment in California Superior Court. We disagree.
 
 
 22
 In Consolidated American, this court awarded a policyholder's assignee postjudgment interest at the statutory rate in a subsequent coverage action. Consolidated American, 951 F.2d at 191. Construing California law, we rejected the argument that a stipulated judgment should be treated any differently for interest purposes than a judgment pursuant to an action tried on the merits. Id. That holding controls.
 
 
 23
 We reject Lexington's attempt to sidestep Consolidated American by arguing that, as Dr. Barg's assignee, Devaney can recover against Lexington no more than Barg could have, and that Barg's "judgment" against Lexington was fully satisfied when Barg received a covenant not to execute in return for an assignment of his rights. Since interest accrues only on the principal amount of a money judgment "remaining unsatisfied," Cal.Civ.Proc. Sec. 685.010(a), Lexington submits that Devaney was entitled to no interest.
 
 
 24
 There is no precedent for this argument. Xebec 's statement in dicta that an assignment of claims to the plaintiff "might be said" to be a discharge of the policyholder's liabilities for the purpose of triggering the insurance company's indemnification obligation, 15 Cal.Rptr.2d at 744 (emphasis added), was made in a different context. Consolidated American is directly on point.
 
 
 25
 If a covenant not to execute granted by Devaney could satisfy Barg's claims against Lexington, Barg could never assign Devaney anything more than a cipher, because by assigning in return for the covenant Barg would extinguish the very rights he assigned. Finally, Lexington's suggestion that we measure Devaney's rights by those of Barg "had he not assigned," properly applied, would require that we disregard the entire agreement between Barg and Devaney. Had there been no assignment, there would have been no covenant not to execute and the coverage action would have been between Barg and Lexington. The interest in this case would simply have been an element of Barg's consequential damages in his action against Lexington for breach.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The D & O policy contains a "no action" clause that provides, in relevant part, that "[n]o action shall lie against the insurer unless, as a condition precedent thereto ... the amount of the insured's obligation to pay shall have been finally determined ... by judgment against the insureds after actual trial...."
 
 
 [2]
 A representative of Lexington attended the Devaney-Barg trial, but did not participate