[No. A054706. First Dist., Div. Five. Aug. 25, 1992.]

GEORGE LIPSON, Plaintiff and Respondent, v.
JORDACHE ENTERPRISES, INC., et al., Defendants;
ROYAL INSURANCE COMPANY OF AMERICA, Movant and Appellant.

## Counsel

Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, Richard S. Gilardi and James E. Sell for Movant and Appellant.

R. Stevens Condie for Plaintiff and Respondent.

Conkle & Olesten and William C. Conkle for Defendants.

## Opinion

**ROUSE, J.**\*—This case concerns an insurance company's attempt to have a posttrial judgment against its insured set aside after it initially declined to undertake the defense.

On May 12, 1989, plaintiff George Lipson filed a complaint for damages against defendants Jordache Enterprises, Inc., Ditto Apparel of California,

---

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment of the Chairperson of the Judicial Council.

Inc., Missy Creations, Ltd., and Ralph Nakash (collectively defendant or Jordache), alleging breach of contract and fraud. Plaintiff alleged he had worked as a commissioned sales representative for defendant (clothing manufacturers) from February 1981 until his termination in August 1988. He complained of breach of his sales commission agreement and fraudulent promise of long-term employment. He alleged damages in the total amount of $2,995,000, including loss of past wages, future income, and general and punitive damages. Defendant answered and raised 16 affirmative defenses, including the bar of the workers' compensation system and at-will employment.

On November 5, 1990, plaintiff's first amended complaint was ordered filed. This complaint added a cause of action for wrongful termination in violation of public policy and alleged personal harassment and emotional distress. In December, defendant answered, claiming plaintiff was not an employee but an independent contractor, and alleging plaintiff asked that his representation be terminated.

Defendant had informed its general liability insurer Royal Insurance Company of America (Royal) of the lawsuit and tendered defense in July 1989. Royal denied coverage, based primarily on the definition of "occurrence" in the policy and plaintiff's status as an employee. Despite repeated communications and protests by defendant, Royal refused to defend.

Trial was set for early May 1991. On May 13, pursuant to the parties' stipulation, a second amended complaint was ordered filed, including new causes of action for negligence and defamation. On May 17, 1991, a brief (25-minute) court trial was held.

Apparently, the parties agreed in advance that trial would proceed on an expedited basis, with the trial court commenting, "I will be prepared to render a judgment, assuming that [the testimony] justifies the allegations." The court later recalled that the parties "seem[ed] to have delineated the issues and . . . the scope of the inquiry" and that "there didn't seem to be any appreciable opposition." The plaintiff was the only witness, and testified briefly, as follows: He was a sales representative for defendant's clothing lines from February 1981 until he was terminated in August 1988. He was responsible for two major accounts: Macy's and Mervyn's. The owner of the company had promised him a job for life, but a new president took over, expressing dislike for sales people and generally making plaintiff's worklife difficult. The company imposed numerous reductions on plaintiff's sales commissions. Shortly before he was terminated, plaintiff learned of a secret meeting between the president's New York-based representative, Lori Levin,

and plaintiff's clients. This event reflected badly on him with his clients; he suffered both physical and emotional distress. He learned during the deposition of Ms. Levin that she informed the president that plaintiff told her he wanted his representation terminated and the president acted on that request. Plaintiff acknowledged that he paid his own withholding tax and did not receive a W-2 form from defendant, but he refused, on brief cross-examination, to admit he was not an employee as defendant maintained. At the end of plaintiff's testimony, the court found that plaintiff had proved the case of negligence and defamation as well as damages for emotional distress. Judgment for $100,000 was awarded against defendant.

Two days before trial, on May 15, 1991, defendant's counsel in Los Angeles sent, by facsimile transmission to Royal's litigation manager in Walnut Creek, a letter again requesting defense, objecting to Royal's positions on coverage and notifying that the "matter" had been set for May 17 (Friday). Defendant also attempted to transmit some 700 pages of documents, including the second amended complaint with its newly alleged tort causes of action for negligence and defamation. Pleading transmission overload, the litigation manager (Michael Collins), in Los Angeles on business, requested through his staff that the documents be sent by overnight mail. Instead, the documents were sent by regular mail and arrived on Monday, May 20. After reviewing the documents, Collins advised defendant, on May 21, that, due to the defamation claim, Royal would accept tender of defense with a reservation of rights. Unbeknownst to Royal, the trial had already taken place and judgment entered.

On June 6, 1991, Royal filed a notice of intention to move for new trial or to vacate and set aside judgment, pursuant to Code of Civil Procedure sections 657 and 662.[1] On June 18, 1991, the actual motion was filed. The accompanying memorandum of points and authorities noted that Royal was proceeding solely on the grounds set forth in subdivisions (6) and (7) of section 657. Royal acknowledged defendant's general comprehensive liability insurance policy, but asserted the trial and resulting judgment had been purposefully structured by plaintiff and defendant "to fit into a narrow window of possible insurance coverage." Royal further argued that the emotional distress claim was barred by the statute of limitations; also that plaintiff was, in fact, an employee covered by the workers' compensation system, and thus the defamation and negligence causes of action suffered from a failure of evidentiary proof.

Royal also filed a companion motion to set aside the judgment pursuant to section 473, based on the grounds that judgment was obtained through

---

[1]All statutory references are to the Code of Civil Procedure.

mistake, inadvertence, surprise and excusable neglect. Royal asserted surprise and inadvertence based on the new causes of action added in the second amended complaint, filed shortly before trial without giving Royal adequate notice or timely information. In its supporting documentation (discussed later in more detail), Royal explained that nothing previously alleged or submitted had alerted it to the possibility of causes of action for negligence and defamation, and that it immediately accepted the defense when so informed.

Plaintiff opposed Royal's motions, arguing that the insurer had adequate notice but refused to defend or to disclose the extent of its information to the trial court and that the appropriate avenue of relief was in the recently filed declaratory relief action. Plaintiff emphasized that the judgment had been paid in significant part and that it was willing to stipulate that it did not seek recovery from Royal.

Defendant filed a "Statement of Position," declining to take any position on the motions that could be used against it in the declaratory relief action, but maintaining that Royal had repeatedly refused to defend the action.

On June 3, 1991, Royal had filed a declaratory relief action against both plaintiff and defendant in the federal district court in San Francisco. (Royal Insurance Company of America v. Lipson et al., C91-1687 MHP.)[2]

On July 16, 1991, the trial court denied Royal's motion to vacate under section 473. Royal had essentially abandoned its motion for new trial and agreed that the motion to vacate was its vehicle of choice. At the brief hearing, Royal expressed its reasons why the declaratory action would not provide relief, in that it would be unable to challenge the implied factual findings from the trial, while shouldering a heavier burden of proof to show fraud or collusion in the judgment. The trial court voiced its policy concerns about vacating the judgment and emphasized Royal's opportunity in the other forum.

On appeal, Royal contends that the trial court abused its discretion in not vacating judgment under section 473.[3] According to Royal, the judgment was entered without its participation due to mistake, inadvertence, surprise or excusable neglect, in that the second amended complaint presented two new causes of action which the last-minute transmission of

---

[2]Apparently, this action has now been combined with one filed by defendant in Los Angeles Superior Court and is pending there.

[3]Section 473 provides in pertinent part: "The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, . . . taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

documents prevented it from defending against. Royal insists that the May 21 acceptance of the tendered defense demonstrates its surprise and good faith.

In response, plaintiff and defendant argue there was no mistake, inadvertence or surprise because Royal had been on notice for nearly two years and refused to undertake the defense. They claim all relevant facts from which the new causes of action arose were known to the insurer long before the filing of the second amended complaint; thus it should have been alert to the potential defense. Furthermore, they contend that the declaratory relief action is the appropriate forum for Royal to address its concerns.

"It is well settled that a motion for relief from default under Code of Civil Procedure section 473 is addressed to the sound discretion of the trial court and that its ruling thereon will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. [Citations.]" (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 257 [431 P.2d 636]; *Khourie, Crew & Jaeger* v. *Sabek, Inc.* (1990) 220 Cal.App.3d 1009, 1012 [269 Cal.Rptr. 687].)

In *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 886 [151 Cal.Rptr. 285 [587 P.2d 1098], the Supreme Court suggested the appropriate use of section 473 to relieve an insurer of a default judgment taken against its insured when the insurer receives little or no actual notice of the proceeding. Obviously, the situation differs here, in that Royal had initial notice of the lawsuit and the judgment was entered after an abbreviated trial instead of default. But plaintiff and defendant raise no objection to Royal's method of challenging the judgment.

In deciding against Royal, the trial court relied on *Sunseri* v. *Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559 [230 Cal.Rptr. 23], a case denying relief to the insurer. Plaintiff Sunseri was injured as a result of a collision between his vehicle and a horse, and sued the defendant stables. Defendant's insurer, Western World, refused to defend, concluding that its policy had been cancelled a month before the accident. Thereafter, the parties entered a stipulated judgment for $550,000, with defendant assigning its rights against Western World to plaintiff. After plaintiff filed a separate action against Western World, the latter moved to vacate the judgment in the first action, alleging fraud and collusion (§ 473). The trial court denied relief, and the Court of Appeal affirmed.

The court explained: "The defendants put Western World on notice of the fact that they alleged the insurance company was liable under its policy when they tendered their defense, but Western World rejected this opportunity to defend. This conscious decision to reject the defense of the underlying action does not justify setting aside the judgment on the basis of

'mistake, inadvertence, surprise or excusable neglect.' (§ 473.)" (*Sunseri, supra*, 185 Cal.App.3d at p. 561.)

Royal argues *Sunseri* is not applicable here because the insurer there had advance notice of the exact claims against its insured before refusing to defend. In contrast, Royal insists, the second amended complaint here, of which it had at the most two days notice, raised new and different claims which it immediately agreed to defend. Moreover, the insurer in *Sunseri* alleged fraud and collusion in the stipulated judgment, allegations that are properly handled in a declaratory relief action.

The real question here is whether the second amended complaint presented new and unexpected claims, or whether Royal should have anticipated the causes of action for negligence and defamation based on the facts of which it had notice. Plaintiff and defendant do not assert that the two-day notice by itself was adequate if the new causes of action were legitimately unanticipated. Rather, they focus on Royal's failure to investigate or to analyze adequately the information submitted over the previous two years.

The question is difficult, but clearly something seems amiss in the circumstances surrounding the "trial": the last-minute stipulation to amend the complaint with new causes of action arguably covered by the policy and the extremely perfunctory trial itself with virtually no opposition from defendant. It appears that the trial was substituted for a stipulated judgment, in order to provide unchallengeable findings of negligence and defamation, with the aim of creating some form of policy coverage.

Royal does not deny that it bears a duty to defend its insured in a suit which potentially seeks damages within the coverage of the policy, and that its duty to defend may be broader than its duty to indemnify. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [419 P.2d 168].) In discussing the insurer's duty, the Supreme Court in *Gray* warned that an insurer "cannot construct a formal fortress of the . . . pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable." (*Id.*, at p. 276; see also *Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 169 [140 Cal.Rptr. 605] [cannot merely rely on language in complaint].) The *Gray* court also noted that a complaint may allege intentional conduct that is in reality only nonintentional, as in the context of a physical assault. (*Gray, supra*, at p. 276.)

In its motion papers and supporting documentation, Royal acknowledges defendant's comprehensive general liability policy, supplemented specifically by coverage for personal injury from defamation. The declaration of

litigation manager Michael Collins details the ongoing communications between defendant and Royal, beginning with defendant's initial tender of defense and submission of the original complaint on July 12, 1989. Defendant forwarded various pleadings, discovery documents and factual information over the next year and a half. Coverage was repeatedly denied, primarily on the basis that the complaint "failed to trigger coverage under the definition of occurrence in the policy," and also noting policy exclusions for injuries to employees occurring in the course and scope of employment.

■ Royal's position that wrongful termination or breach of contract in the employment setting is not an "occurrence" under a general liability insurance policy is well established in California law. (*Commercial Union Ins. Co. v. Superior Court* (1987) 196 Cal.App.3d 1205 [242 Cal.Rptr. 454].) The policy at issue defines "occurrence" as accident; thus, any intentional conduct, i.e., termination, even if due to a misunderstanding, is not covered as an occurrence. Royal still denies coverage for negligence on this ground.[4] In fact, we cannot say that Royal should have defended this claim on the possibility that the initially pled intentional act could become only a negligent act at the time of trial. An employment termination, even if due to mistake, cannot be unintentional.

■ The basic policy here was supplemented by coverage for personal injury defined, in part, as a publication or utterance "of a libel or slander or other defamatory or disparaging material." This type of injury was never alleged in the first two complaints nor did any of the documentation submitted by defendant mention defamation. Rather, the argument is that, from the facts brought to Royal's attention, i.e., plaintiff had been demoralized and extremely emotionally distressed on learning that Lori Levin had met with his clients, because that conveyed the company's mistrust or low opinion of him, Royal should have surmised that a claim for defamation was possible. No specific disparaging or potentially defamatory statements by Levin to the clients were reported; however, according to plaintiff, the act itself should have been seen as defamatory. This assertion is difficult to accept. It would force insurers to defend any potential manipulation of the policy.

---

[4]In his brief, Lipson made passing reference to the case of *Republic Indemnity Co. v. Superior Court* (1990) 224 Cal.App.3d 492 [273 Cal.Rptr. 331], as allowing for the possibility of an employment termination being a negligent act. However, that case is not on point. *Republic* concerns the interpretation of an employer's liability endorsement of a workers' compensation insurance policy, and the plaintiff's wrongful termination action was based on a theory of failure to reasonably accommodate. Moreover, two earlier appeals had decided certain issues in the underlying civil action, including the reversal of a summary judgment for the insured on the issue of reasonable accommodation. The *Republic* court determined that the statutory exclusion precluding indemnification for wilful acts did not absolve Republic of its defense obligations nor did the policy itself preclude defense.

Royal's rigid stance that plaintiff was an employee and thus covered by the workers' compensation system is disputed by defendant, which insists that the facts showed plaintiff was an independent contractor. However, plaintiff refused to admit to being an independent contractor and the allegations in his complaint carefully avoid the issue. In any event, even if Royal was wrong about plaintiff's status, the policy does not cover a wrongful termination or breach of contract.

Both in the trial court and on appeal, plaintiff insists that Royal has not disclosed the full extent of its information prior to trial. With its respondent's brief, defendant submitted several letters with which the record was augmented. Assertedly, those documents bolster the argument that earlier Royal had information that should have caused it to accept the defense. Included are several letters to Royal from defendant, emphasizing plaintiff's claims for emotional distress, together with a November 1990 response from Royal, stating that claims for emotional distress do not result from an occurrence under the policy provisions. The most detailed letter was written by defendant to Royal at the end of March 1991, pointing out that plaintiff is not an employee and that he alleges a series of diverse, nonintentional acts by defendant that caused his emotional distress, for example, checks in payment of commissions due, sent without authorizing signatures. The final document is a request from defendant for Royal to attend a mandatory settlement conference on April 29, 1991. While these documents clearly set out the information provided to Royal, nothing contained in them can be construed as giving more concrete notice of potentially covered causes of action for negligence or defamation.

■ Royal is responsible only for defense of the risk it insures. "The nature and kind of risk covered by the policy limits the duty to defend. The carrier has the duty to defend the insured against loss of the nature and kind against which it was insured. [Citation.] By negative implication, the insurer has no duty to defend the insured against loss of the nature and kind that is not 'within the coverage of the policy.' [Citation.]" (*Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298] [policy language defining "occurrence" as accident excludes coverage of emotional distress arising after termination of employment].) Here, plaintiff cannot recharacterize an intentional act of termination as negligent conduct in order to bring it under potential policy coverage.

Royal places great reliance on the case of *Jade K.* v. *Viguri* (1989) 210 Cal.App.3d 1459 [258 Cal.Rptr. 907], where plaintiffs sued for negligence and defendant's business premises liability carrier was not notified of the action until after default was entered. The trial court denied the insurer's

motion to vacate, presumably because defendant had timely tendered defense to his homeowner's policy agents who allegedly should have known of his business premises policy with a related company. The reviewing court reversed, finding the business premises insurer was not on actual notice until after the default was entered and then moved quickly to vacate the judgment.

But *Jade K.* is readily distinguishable in that it deals with entry of a default, not a judgment after trial. Moreover, the insurer there had no earlier notice of claim; it had no occasion, as Royal did here, to refuse to accept defense.

Royal further supports its argument for vacating the judgment by setting out its defenses to the second amended complaint. Royal argues that (1) the new causes of action for negligence and defamation are barred by the statute of limitations (§§ 335, 340, subd. (3)); (2) plaintiff's claims are barred by workers' compensation; and (3) plaintiff fatally failed to allege malice. ■ However, as plaintiff accurately points out, "[t]he existence of a defense is irrelevant to the critical question of whether the moving party showed that his failure to act was caused by 'mistake, inadvertance [*sic*], surprise or excusable neglect.' (§ 473.)" (*Uva* v. *Evans* (1978) 83 Cal.App.3d 356, 362 [147 Cal.Rptr. 795].)

■ On balance, we conclude Royal has presented an adequate case for relief from the judgment due to the surprise of the second amended complaint. We cannot agree with plaintiff and defendant that Royal should have known of the new causes of action from the facts in its possession. Royal's immediate offer of defense when informed of the amendments attests to its good faith. In relying on *Sunseri,* the trial court failed to appreciate the differences involved in this situation, where new causes of action were added at the last minute and judgment was entered shortly thereafter, following an alleged trial on the merits.

In light of our decision to reverse the order denying the motion to vacate judgment, we need not consider Royal's further claims of error.

The order denying the motion to vacate judgment under section 473 is reversed, and the matter is remanded to the trial court for further proceedings. Each party shall bear its own costs on appeal.

Haning, Acting P. J., and King, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 12, 1992. Kennard, J., was of the opinion that the petition should be granted.