[No. A073258. First Dist., Div. Five. Oct. 30, 1996.]

GARY MELUGIN et al., Plaintiffs and Appellants, v.
ZURICH CANADA, Defendant and Respondent.

COUNSEL

Celebrezze & Wesley, Bruce D. Celebrezze and Katherine Cranston Potter for Plaintiffs and Appellants.

Borton, Petrini & Conron and Tuvana Jeffrey for Defendant and Respondent.

OPINION

PETERSON, P. J.—In this case, respondent insurer sold a policy to its insureds covering liability for "discrimination, . . . violation of civil rights, [and] sexual discrimination," but providing as to this grant of coverage that "damages based on the above offences are only covered where insurance against same is not prohibited by law." The respondent insurer now contends it had no duty to defend a lawsuit alleging that its insureds committed sexual discrimination, because insurance for those discrimination allegations would be prohibited by law under the provisions of Insurance Code section 533 (section 533) and by certain exclusionary clauses of the policy. We conclude that the provisions of section 533 as applied to this case, and applicable policy exclusions, do not relieve the insurer of the duty to defend its insureds in an underlying lawsuit brought by former employees alleging discrimination in employment in violation of the provisions of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.), and related common law causes of action.

Appellants Gary Melugin (Melugin) and his employer, the Canada Life Assurance Company (Canada Life), were sued for sexual discrimination in violation of the FEHA, and on common law causes of action which repeat and mirror those FEHA allegations, by two former employees of Canada Life. (Smith v. Canada Life Assurance Co. (Super. Ct. Alameda County, 1993, No. 717409-4) (the underlying action).) Appellants Melugin and

Canada Life tendered the defense of the underlying action to their insurer, respondent Zurich Canada (Zurich). Zurich denied it had provided any applicable insurance coverage for such employment discrimination actions, and refused to defend the insureds. The trial court ultimately agreed with Zurich, and granted summary judgment against appellants' claims.

We reverse. In so doing, while cognizant of the principles stated in the previous decisions of this court (Division Five) in *Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595 [18 Cal.Rptr.2d 692] (*Coit*) and *Lipson* v. *Jordache Enterprises, Inc.* (1992) 9 Cal.App.4th 151 [11 Cal.Rptr.2d 271] (*Lipson*), we find these prior decisions distinguishable because in neither case did the insurer specifically grant coverage for claims of "discrimination" and then seek to disavow this specific grant of coverage. Further, we will explain that in this case, as opposed to *Coit* and *Lipson*, the allegations of the complaint in the underlying action, which the insured tendered to the insurer for purposes of defense, disclose potential liability which is neither deemed uninsurable by the provisions of section 533, nor excluded from potential coverage and a concomitant duty to defend by the exclusionary provisions of the liability insurance policy at issue.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Melugin was employed as a district group manager of appellant Canada Life. Among the Canada Life employees reporting to Melugin were Melody Smith (Smith) and Denise Johnson (Johnson). Smith and Johnson filed the underlying action against Melugin and Canada Life, alleging wrongful discriminatory treatment followed by termination of their respective employments.

Smith alleged in the complaint in the underlying action that she was employed for more than five years, but was subjected to unfair criticism, unfair treatment, and sex-based harassment by Melugin, in violation of the laws against sex discrimination stated in the FEHA. She alleged this discriminatory treatment and sexual harassment caused her to be forced to resign her position, and resulted in her constructive discharge in violation of the FEHA. She also alleged this same course of wrongful conduct constituted marital status discrimination against her in violation of the FEHA, as well as common law causes of action which realleged and mirrored her FEHA causes of action.

Johnson alleged she was employed for more than three months, but was harassed and fired after she became pregnant, which was a violation of the FEHA and a common law tort of wrongful discharge.

Appellants Melugin and Canada Life sought to tender the defense of the complaint in the underlying action to their insurer, respondent Zurich. Zurich refused to provide a defense, contending its commercial general liability policy issued to appellants did not provide indemnity for these alleged claims for wrongful discrimination and related torts.

Appellants then brought this action against Zurich, seeking a declaration that the policy obligated Zurich to provide a defense; as well as claims for breach of contract, declaratory relief, and breach of the covenant of good faith and fair dealing, with claims for punitive damages.

Zurich demurred, contending it was not obligated to provide a defense. The trial court overruled the demurrer, because it concluded there was a potential for indemnity coverage under the decision of a federal district court in *Save Mart Supermarkets* v. *Underwriters* (N.D.Cal 1994) 843 F.Supp. 597 (*Save Mart*).

The matter was then heard by a different trial judge on cross-motions for summary adjudication or summary judgment. The parties did not present any relevant facts or evidence to the court, other than the complaint in the underlying action and the policy in question. That trial court first ruled Zurich was not obligated to provide a defense to the underlying action, but Zurich could be nonetheless liable for punitive damages for not providing a defense.

Appellants sought reconsideration of this ruling, which they argued was "inconsistent." On reconsideration, the first trial judge ruled Zurich could not be liable for punitive damages because it was under no duty to defend the underlying action. Appellants brought this timely appeal from the resulting judgment in favor of Zurich on all issues.

II. DISCUSSION

We reverse the judgment of the trial court. Zurich was obligated by its policy to defend appellants in the underlying action for discrimination and related intentional torts.

A. *Relevant Policy Provisions*

The policy in question here is a commercial general liability policy, individually negotiated by the parties, with the following relevant provisions.

The coverage granted is as follows: "The Insurer agrees to pay on behalf of the Insured all sums which the Insured shall become obligated to pay as

damages . . . because of: [¶] A. Bodily Injury (as defined herein) . . . ; [¶] B. Personal Injury (as defined herein) . . . ." Both Canada Life and Melugin are insureds under the policy.

### 1. *Personal Injury Liability, Including "[D]iscrimination"*

The term "Personal Injury" is defined as "(a) False arrest, detention or imprisonment, or malicious prosecution; [¶] (b) the publication or utterance of a libel or slander . . . ; [¶] (c) wrongful entry or eviction . . . ; [¶] (d) *discrimination, racial or religious discrimination and/or violation of civil rights, humiliation, sexual discrimination, alienation of affection, however damages based on the above offences are only covered where insurance against same is not prohibited by law.*" (Italics added.) The policy also excludes "personal injury sustained by any person as a result of an offense directly or indirectly related to the dismissal of any employee of the Insured."

### 2. *Bodily Injury*

The term "Bodily Injury" is defined in the policy as "injury to the body of a person, shock, mental anguish, mental injury, mental suffering, sickness . . . ."

The following exclusions are also claimed to be relevant here: "This Insurance Does Not Apply To: [¶] . . . [¶] 2. Bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured . . . . [¶] 3. Any obligation for which the Insured or his Insurer may be held liable under any Workers' Compensation law." In addition, the policy excludes coverage for bodily injury "caused intentionally by, or at the direction of an executive officer of the Insured . . . ."

### B. *Relevant Precedents Under Section 533*

First, the parties state correctly the general principles that the duty to defend can be broader than the duty to indemnify (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*); *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*)), and that this obligation can arise if the allegations against the insured, generously construed, disclose potential liability for any conduct for which coverage is not barred by law (*Horace*

*Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1083 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*)).

In *Coit, supra,* 14 Cal.App.4th at pages 1602-1614, we held an insurer had no duty to indemnify in similar circumstances, where it was alleged that the insureds had wrongfully terminated an employee, and discriminated against her and harassed her in violation of the FEHA. We based this holding on the provisions of section 533 which bar coverage for "the wilful act of the insured."[1] ■ As we observed in *Coit,* "it is clear that section 533, and the public policy it represents, bar the attempt to shift liability for *intentional* sexual harassment and associated employment-related torts (claims of wrongful discharge, infliction of emotional distress, battery, and sexual assault) to an insurer." (14 Cal.App.4th at p. 1603, italics added.)

In our prior opinion in *Lipson, supra,* 9 Cal.App.4th at pages 154, 158-161, we likewise ruled there was no coverage as to an action brought by a former employee who alleged he was harassed and wrongfully terminated by the insured. We noted that the alleged torts could not constitute the sort of circumstance for which coverage was provided under the policy: "An employment termination, even if due to mistake, cannot be unintentional." (*Id.* at p. 159.)

These precedents are here distinguishable, however. They were limited to general policy language defining an occurrence or accident, not to policies granting coverage for discrimination. Unlike the case at bench, *Coit* came to us on a full factual trial record. That record established the insureds were not entitled to indemnity by their insurer since the coverage sought was for the actions of Coit's president, actions which were proven to be only *intentional,* wrongful conduct amounting to sexual harassment and discrimination, and wrongful discharge in violation of the requirements of the law and public policy, which *intentional, willful* conduct was *ratified* by the insured corporation. Section 533 bars coverage only for an alleged act which is inherently harmful, intentional, and willful. (*Coit, supra,* 14 Cal.App.4th at p. 1603; accord, *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689] [Section 533 bars coverage for sexual molestation.]; cf. also *Horace Mann, supra,* 4 Cal.4th at p. 1083 [There is no obligation to defend against allegations of intentional sexual misconduct, even though other negligence claims might potentially be covered by the policy.]; *B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992)

---

[1]Section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

8 Cal.App.4th 78, 92-102 [9 Cal.Rptr.2d 894] [Under section 533, there is no obligation to defend a suit alleging only intentional discrimination.].)[2] Section 533 does not bar coverage for conduct which may be wrongful, but which is not intentional or willful from the standpoint of the insured. (*Horace Mann, supra,* 4 Cal.4th at p. 1083; see also *Coit, supra,* 14 Cal.App.4th at p. 1607.)

### C.   *There Was Potential Liability Here for "[D]iscrimination" Which Was Not Necessarily "[W]ilful" Under Section 533*

■ Appellants correctly suggest that there could be some acts occurring in the working world which would constitute sexual discrimination in employment, but which would involve only unintentional, negligent conduct, for which coverage might exist. For instance, in *Save Mart, supra,* 843 F.Supp. at page 606, the federal district court noted there could be sex discrimination claims which did not result from intentional conduct and were only prosecuted on a "disparate impact" theory, for which coverage would not necessarily be barred by section 533. (See also *Solo Cup Co.* v. *Federal Ins. Co.* (7th Cir. 1980) 619 F.2d 1178, 1186-1187.) We also noted this possibility in *Coit,* although we found there was no potential liability on a disparate impact theory where the president and controlling shareholder of the insured corporation had a notorious, well-known habit of sexually assaulting his female employees and his conduct was ratified by the corporation. (14 Cal.App.4th at pp. 1605-1609.) Those necessarily intentional and willful acts of outrageous conduct are not in issue here.

In her complaint, Smith alleged that she was subjected to sexual "discrimination" and was eventually forced to resign by a course of allegedly harassing conduct based upon her sex through inept or "unfair[]" personnel management, which conduct constituted sexual discrimination and harassment, as well as common law causes of action. Johnson alleged she was subjected to "discrimination" because she was similarly "harassed" by unfair personnel management and eventually was let go because she became pregnant, in violation of the FEHA.[3] Under both the policy language and the parallel provisions of section 533, there could be potential insurance coverage triggering Zurich's duty to defend its insured for those causes of action,

---

[2]In its brief on appeal, Zurich principally relied upon citations to a decision by Division Four of this district which is no longer published and, therefore, not citable authority. (Cal. Rules of Court, rule 977.)

[3]The FEHA provides, "It shall be an unlawful employment practice unless based upon a bona fide occupational qualification: [¶] (a) For any employer, because of the pregnancy . . . of any female employee, . . . to discharge her from employment . . . ." (Gov. Code, § 12945.)

which all related to alleged "discrimination" which is specifically covered by the policy's grant of coverage for "Personal Injury." (*Save Mart, supra,* 843 F.Supp. at p. 606.)

The policy provides coverage for sexual discrimination, if "insurance against same is not prohibited by law." Thus, the legal issue is whether section 533 would bar all coverage for sexual discrimination, including acts which are not necessarily intentional. Under section 533, however, coverage would be barred only for the willful torts of *intentionally* discriminating against employees in violation of the laws against sex discrimination or pregnancy discrimination. (See *Coit, supra,* 14 Cal.App.4th at p. 1610; *Lipson, supra,* 9 Cal.App.4th at p. 160.) The allegations in the complaint in the underlying action do not necessarily hinge only upon willful, intentional conduct which would be barred by section 533.

### D.   *Canada Life Could Be Potentially Liable Even Though Its Own Conduct Was Not "[W]ilful"; Melugin Was Entitled to a Defense Even Though He Could Not Be Personally Liable for "[D]iscrimination"*

Next, appellants again state a general principle correctly when they contend that even if section 533 would bar coverage to Melugin for his own intentional acts, section 533 would not necessarily bar coverage to Canada Life for its own strict liability as a result of Melugin's wrongful acts. (See *Lisa M.* v. *Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 305, fn. 9 [48 Cal.Rptr.2d 510, 907 P.2d 358] [Where it was alleged that an employee of a hospital acted wrongly when he seduced a patient, "Neither [section 533] nor related policy exclusions for intentionally caused injury or damage preclude a California insurer from indemnifying an employer held vicariously liable for an employee's willful acts."].)

The complaint in the underlying action alleged discrimination in employment through harassment during the course of that employment. Both former employees alleged they were employed by Canada Life, not Melugin. Only Canada Life, not a supervisor such as Melugin, could be liable under the FEHA for that alleged discrimination. (*Janken* v. *GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 65-79 [53 Cal.Rptr.2d 741] (*Janken*).)[4] Although the complaint and the FEHA charge of Smith also claimed Melugin "harassed" Smith by requesting that she prepare daily time sheets for her work

---

[4]We adopt the persuasive analysis of the *Janken* court, which is in accord with the statutory provisions of the FEHA. In addition, we note that our Supreme Court recently denied review in *Janken.*

activities, such routine personnel decisions, necessary "to carry out the duties of business and personnel management," cannot constitute harassment in support of a claim of individual liability against a supervisor under the FEHA. (*Id.* at p. 65.) Since Melugin could not be individually liable, only Canada Life could potentially be liable under the FEHA for the acts alleged by Smith on a theory of strict liability.

Zurich, however, cannot posit a rejection of its duty to defend Melugin in this case solely on the basis that he cannot, for these reasons, be individually liable to plaintiffs as a matter of law. Neither section 533 nor any exception to coverage in the insurance policy at issue here permits Zurich's denial of defense because plaintiffs' causes of action are barred for legal reasons, which do not otherwise wholly preclude and negate the narrower duty to indemnify. In such circumstances, the insurer must defend its insured in establishing such legal defenses, e.g., by filing a demurrer or moving for summary judgment on the insured's behalf.

The same result obviously follows as to the other common law claims in the underlying action which incorporate and reallege the FEHA discrimination claims. Only Canada Life, not Melugin, employed Smith and Johnson; and only Canada Life, not Melugin, could be liable. Of course, Zurich would still be obligated to defend its insured Melugin, by filing a demurrer to the causes of action against him or moving for summary judgment, on the facts alleged in this case. However, Canada Life could be strictly liable here, even for acts of Melugin which it did not authorize, ratify, or condone. Such potential liability exists under the FEHA for discrimination which is not barred by section 533, and Zurich is required to provide a defense therefor. (See *Gray, supra,* 65 Cal.2d at pp. 275-276.) In addition, the complaint includes allegations of respondeat superior liability which could result in potential liability by Canada Life for the common law torts, mirroring the FEHA causes of action, even though Canada Life did not itself ratify the allegedly wrongful acts of Melugin. (See *id.* at pp. 273-274, 277-278.)

The complaint in the underlying action also alleged that all of Melugin's acts were ratified by Canada Life; and we have previously held in *Coit, supra,* 14 Cal.App.4th at pages 1606 and 1613, that under section 533 a corporation cannot obtain coverage for sexual discrimination which it has ratified. However, at summary judgment, this mere allegation of ratification was not supported by any evidence. The burden of proving ratification for summary judgment purposes is on the moving party. The base allegation of ratification in the underlying complaint is insufficient to prove the truth of such claimed employer conduct for the purposes of excluding a duty *to defend* that employer. (*Gray, supra,* 65 Cal.2d at pp. 275-276.)

The case might well be different on this ratification question if Zurich had presented evidence in the summary judgment proceedings showing that Melugin's intentional acts were ratified by Canada Life and were known or authorized by it. However, Zurich apparently decided, as a tactical matter, not to present any evidence on this issue in the summary judgment proceedings; and we are constrained by the record before us to conclude that in the absence of the proffer of any such evidence by Zurich in support of its motion, summary judgment against appellants on the duty to defend issue was improper under section 533. (See *Montrose, supra*, 6 Cal.4th at pp. 301, 304-305; *David Kleis, Inc.* v. *Superior Court* (1995) 37 Cal.App.4th 1035, 1045-1046, 1048-1051 [44 Cal.Rptr.2d 181].) We emphasize, however, that we deal in this appeal only with the question of a duty to defend. Questions of indemnification, and other legal issues arising from the relationship between insurer and insured, are not before us in this appeal. We hold only that section 533 did not preclude a duty to defend.

### E. *The Policy Exclusions Do Not Abolish Zurich's Duty to Defend*

The policy in question also contains an express exclusion for any liability resulting from any *bodily injury* "to any employee of the Insured [i.e., Canada Life] arising out of and in the course of his employment by the Insured . . . ." which is argued to bar coverage for and a duty to defend against liability for *bodily injuries* to Smith and Johnson from Canada Life's allegedly discriminatory conduct against them during their employment. However, this exclusion does not apply to the "Personal Injury" liability of the policy which insures against liability for "discrimination."

The policy also excludes liability for "personal injury sustained by any person as a result of an offense directly or indirectly related to the dismissal of any employee of the Insured." However, this vaguely worded exclusion, when properly interpreted narrowly against the insurer (see *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]), does not and cannot revoke the insurer's duty to defend in view of the coverage granted for claims of "discrimination" which is contained in the personal injury provisions of the policy. First, this "Personal Injury" exclusion is not so broad as the "arising out of and in the course of his employment" clause which relates to bodily injury coverage. The claims of Smith in the underlying action have no relation at all to a dismissal from employment; she alleged, in fact, that she resigned after being harassed. Similarly, claims by Smith or Johnson that they were discriminated against during their employment cannot be excluded merely because they also subsequently left that employment. This exclusion, as well as the bodily

injury exclusion above quoted, would not apply in any event to the coverage granted to Melugin under the policy, since he was not an employer, and the claims of plaintiffs do not relate to his dismissal of any of his own employees.[5] The mere act of unintentionally discriminating against someone in violation of the law cannot be an "offense" negating the very coverage granted to the insured for claims of "discrimination" by the policy itself. This interpretation by Zurich of its policy would result in an entirely fictional grant of coverage, by which the express grant of coverage for claims of discrimination would be empty and idle because such claims in all cases would be barred by section 533 or by inapplicable policy exclusions. We reject Zurich's interpretation. (See *Gray, supra,* 65 Cal.2d at pp. 275-278.)

### F. *Conclusion*

The bottom line in this case is that Zurich explicitly offered its insureds coverage for claims alleging liability for "discrimination"; but when a complaint was filed against its insureds alleging discrimination, Zurich refused to defend its insureds, contending that section 533 and inapplicable policy exclusions excused it from providing the coverage agreed upon. Zurich was not entitled to do so here. If Zurich desires to market and sell a policy which provides coverage for claims of discrimination, but excludes all claims of discrimination by employees of any insured, it must say so in clear, unambiguous policy language which is not present in the exclusionary language of the policy at issue here. The provisions of section 533 applied to this case do not relieve Zurich of the broad duty to defend, even though it would have been entitled, in performing that duty, to reserve its right to contest its liability to indemnify.

---

[5]Similarly, the policy contains an exclusion from the bodily injury coverage, but not from the personal injury coverage, for bodily injury "caused intentionally by, or at the direction of an executive officer of the Insured . . . ." This exclusion by its own terms does not apply to the personal injury coverage for discrimination liability granted by the policy, and cannot apply to bodily injury coverage unless an "officer" of the insured has directed that a person be injured. Here there is no showing that Melugin was an officer of Canada Life, or that he intentionally directed any bodily attack on the plaintiffs in the underlying action. In addition, the policy contains an exclusion for liability for bodily injury which arises under the workers' compensation laws; but that exclusion is not applicable because Melugin is not an employer, because the allegations of discrimination involved here arise under the FEHA and are not governed by the workers' compensation laws (cf. *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 31, 46 [36 Cal.Rptr.2d 100, 884 P.2d 1048]), and because the exclusion applies only to the bodily injury coverage, not the personal injury coverage.

III. DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for entry of an order declaring that Zurich has a duty to defend Canada Life and Melugin, and for further proceedings in accordance with the views expressed in this opinion.

Haning, J., and Champlin, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 15, 1997.

---

*Judge of the Napa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.