[No. G026162. Fourth Dist., Div. Three. Sept. 27, 2001.]

WILLIAM TURNER et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and
Respondent.

**COUNSEL**

Robert W. Battin for Plaintiffs and Appellants.

Luce, Forward, Hamilton & Scripps, Peter H. Klee, Seth M. Friedman and Marc J. Feldman for Defendant and Respondent.

**OPINION**

**MOORE, J.**—The trial judge dismissed this action after sustaining a demurrer to the first amended complaint without leave to amend. William and Leslie Turner (the Turners) appeal from the judgment, contending the trial court erred in determining a third party libel and slander action did not trigger a potential for coverage or a duty to defend under a rental dwelling insurance policy. We disagree and affirm.

## I

### FACTS

The Turners, who are husband and wife, obtained a rental dwelling insurance policy from State Farm Fire and Casualty Company (State Farm) for a piece of property they own, located in Villa Park, California. The Turners reside elsewhere. After they were sued for defamation and State

Farm refused to defend or indemnify, the Turners in turn brought suit against State Farm under the rental dwelling policy for failure to defend, breach of the duty of good faith and fair dealing, and negligence.

The first amended complaint alleged a duty of State Farm to defend against the defamation suit based on a series of supposedly connected events that would make even Mrs. Palsgraf recoil.[1] The Turners, while at home *and not at the rental property*, had a "verbal dispute" with each other over new rental terms for tenants of the rental property. The dispute escalated and Mrs. Turner pulled a gun on Mr. Turner. Mr. Turner, doubting the gun was loaded, took it away from Mrs. Turner. Mrs. Turner then attempted to slug Mr. Turner with a stainless steel golf club (iron). Mr. Turner blocked Mrs. Turner so as to sustain blows only to the bottom of his shoe.

A 911 call was placed to the Orange County Sheriff's Department. Mr. Turner told the police Mrs. Turner had a history of mental problems, but never took her medication, and that the police had been called to the home the previous year when the couple was arguing. Mrs. Turner was arrested for assault with a deadly weapon and taken to the Orange County women's jail. The police report notes that Mrs. Turner was irrational. At the jail Mrs. Turner claimed a male deputy had performed an inappropriate strip search on her before bringing her in. Later Mr. Turner also complained about the search the deputy had performed on his wife. Subsequently, the male deputy sheriff filed a lawsuit against both Mr. and Mrs. Turner for defamation.

The Turners tendered the defense of the deputy's action to State Farm under the rental dwelling policy, which State Farm declined. They then paid $12,500 to attorneys to defend them in the defamation action. Because State Farm refused to defend them, the Turners paid the deputy $15,000 to settle his claim.

The court sustained the demurrer to the Turners' first amended complaint without leave to amend and entered judgment in favor of State Farm. The Turners then filed their notice of appeal. They contend the trial judge erred in sustaining the demurrer because State Farm was under a duty to defend the deputy's libel and slander suit against them according to the terms of the rental dwelling policy.

---

[1]*Palsgraf v. Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253]. While Mrs. Palsgraf stood on a platform of defendant's railroad, a man carrying a package of fireworks wrapped in a newspaper attempted to board a moving train. A railroad employee assisted him, and the package was dislodged, fell and exploded. The shock threw down platform scales many feet away, and these struck Mrs. Palsgraf.

## II

### DISCUSSION

*Introduction*

The standard of appellate review where judgment is entered after the sustaining of a demurrer is well established. " 'When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040-1041 [232 Cal.Rptr. 542, 728 P.2d 1177].)

In ruling on the demurrer, a court must give the operative pleading a reasonable construction, assuming the truth of properly pleaded material facts together with all judicially noticed facts. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1028 [65 Cal.Rptr.2d 833]; *Lacher v. Superior Court* (1991) 230 Cal.App.3d 1038, 1043 [281 Cal.Rptr. 640].)

The Turners claim error because the trial court sustained State Farm's demurrer without leave to amend. While they obviously had amended their pleading at least one time, since the demurrer was to the first amended complaint, the Turners provide no citation to anything in the record to show they either requested leave to amend again or indicated they could amend again. Nor do they provide any indication to this court that they could have pleaded their case more successfully if given an opportunity to do so. Thus, we will assume the first amended complaint represents their best pleading.

*The insurance policy*

The policy is called a rental dwelling policy. This type of policy is generally similar to, but usually less expensive than, a comprehensive or commercial general liability policy (CGL). It is available to landlords who want some but not all of the coverages provided in a standard CGL policy. (See 1 Cal. Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar 1994) § 1.32, p. 1-24 [concerning owners', landlords' and tenants' liability policies].)

The language on which the Turners rely is contained in two separate sections of the policy. The first, which describes the business liability coverage, provides: "If . . . a suit is brought against any insured for damages because of . . . personal injury . . . to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises, we will: [¶] . . . [¶] 2. provide a defense at our expense by counsel of our choice. . . ." (Emphasis in original omitted.) The second defines "personal injury" as an "injury arising out of one or more of the following offenses: [¶] . . . [¶] b. libel, slander or defamation of character . . . ."

*Duty to defend*

■ An insurance company has a duty to defend a lawsuit against its insured if there is a potential for coverage. The insured need only show the underlying claim may fall within the policy coverage. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) When there is no potential for coverage, there is no duty to defend. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47 [65 Cal.Rptr.2d 366, 939 P.2d 766].) The Turners' allegations must be examined to determine if they fall within the coverage of their policy.

■ The Turners imply State Farm denied them a defense without ever investigating extrinsic facts to determine whether a disagreement about the rental property instigated their fight. State Farm agrees it made no attempt to verify this assertion, but says it made no difference, since it assumed the Turners' version of the facts to be correct, but found no potential for coverage anyway. We will also assume it is true the Turners were arguing about their rental property when the police were called. Since there appear to be no other facts the Turners claim would have implicated coverage, State Farm is correct that it makes no difference that it did not investigate the Turners' story before it refused to defend.

Some case authority must be examined to determine whether the Turners are able to show a potential for coverage under their State Farm policy. To trigger a duty to defend, there must be a causal connection between the insuring clause of their policy and the slanderous statements. (*Kramer v. State Farm Fire & Casualty Co.* (1999) 76 Cal.App.4th 332, 340 [90 Cal.Rptr.2d 301].)

*Feurzeig v. Insurance Co. of the West* (1997) 59 Cal.App.4th 1276 [69 Cal.Rptr.2d 629] requires consideration here. Feurzeig, an officer of a corporation that was insured under a CGL policy, was sued for slander. Two

men who had previously managed some real estate properties, which were not insured under the policy, alleged that Feurzeig slandered them in conversations with lenders, vendors, subcontractors and investors in the properties. Coverage under the policy was limited to claims arising out of the ownership, maintenance or use of the insured premises. Some of the allegedly slanderous remarks were made at the insured premises. The *Feurzeig* court held, since Feurzeig's remarks were uttered as an officer or director of the insured entity and arose from the use of the insured premises, there was a duty to defend.

In comparing *Feurzeig* with the case before us, we see some glaring differences. We will ignore the different types of policies because the coverage is quite similar. In *Feurzeig* the allegedly slanderous remarks were made *at* the site of the insured property and *in connection with* the insured business. To compare with the Turners' situation, we see the remarks were *not made at* the rental property. And while there had been an earlier discussion about the rental property, the allegedly slanderous remarks were *not about* the rental property. They were made much later, both at and after the time Mrs. Turner was taken to the police station.

While *Feurzeig* is a case in which the court held there was a duty to defend, a case with the opposite result is *Kramer v. State Farm Fire & Casualty Co., supra,* 76 Cal.App.4th 332. Just as in the instant case, *Kramer* concerned a rental dwelling policy. It covered "claims for accidental injuries arising 'from the ownership, maintenance, or use of the insured premises . . . .' " (*Id.* at p. 334.) In *Kramer,* a grandmother and stepgrandfather who owned rental properties brought an action against their insurer. The insurer refused to provide coverage for a suit by the daughter, son-in-law and four grandchildren, who alleged the stepgrandfather molested the grandchildren at the premises, and the grandmother concealed the molestation. The court recognized the difficulty in crafting a rule that would apply in every case involving the use of a premises. (*Id.* at p. 340.) It concluded, even though the molestations occurred on the premises and arose from the grandparents' use of the premises to care for the grandchildren, there was no indication the grandchildren were exposed to any peculiar risk of molestation due to the use of the premises. (*Ibid.*) The grandparents argued it would have been impossible for the acts to occur without the use of the dwelling. In fact, there had been molestations at other properties as well, thus making it obvious the molestations could have occurred had the grandparents not owned, maintained or used the insured premises. (*Id.* at pp. 340-341.) The court was satisfied the required causal connection between the use of those premises and the tortious activity causing the injury was lacking. (*Id.* at p. 341.)

In the case before us, the causal connection is even more attenuated. In *Kramer*, since at least some of the tortious activity occurred on the insured premises, there was a direct connection between the tortious activity and the insured premises, even though the court held the causal connection was lacking. Where the Turners are concerned, however, their argument did not even occur on the insured premises. Although Mr. and Mrs. Turner were discussing rental property terms when Mrs. Turner blew up, assaulting her husband with a gun and then a golf club, it does not follow that the purported strip search and subsequent defamatory statements were "sufficiently causally related to the [ownership] of [the rental] property to warrant coverage." (*Kramer v. State Farm Fire & Casualty Co., supra,* 76 Cal.App.4th at p. 340.) As stated in *Kramer*, "we are satisfied that the required relationship is lacking in this case." (*Ibid.*)

In *Farmers Ins. Exchange v. Reed* (1988) 200 Cal.App.3d 1230 [248 Cal.Rptr. 11], the Reeds, like the Turners, had a fight. She was drunk. He took her keys so she could not drive home. Another car struck and injured Mrs. Reed while she was walking home. She sued Mr. Reed for her injuries. Farmers had issued the Reeds an automobile insurance policy which provided "the insurer would pay damages for which any insured person was legally liable 'because of bodily injury to any person . . . arising out of the ownership, maintenance or use of a private passenger car . . . .' " (*Id.* at p. 1232.) In Farmer's declaratory relief action, the court concluded the independent acts of the woman and the driver who struck her broke any causal connection between the husband's use of his vehicle and her injuries. (*Id.* at p. 1234.)

The break in the causal connection between the ownership, maintenance or use of the vehicle is similar to the Turners' situation. Just as Mr. Reed's taking the keys from Mrs. Reed happened some time prior to her being struck by another car, the Turners' argument about the rental property occurred several steps prior to the slanderous remarks about the police officer.

*Peters v. Firemen's Ins. Co.* (1998) 67 Cal.App.4th 808 [79 Cal.Rptr.2d 326] revolves around yet another feuding couple. She said he gave her a gift that will last forever when they were aboard his insured luxury yacht. When she discovered the herpes, she sued him. Again, the boat insurance policy insuring language was similar to that in State Farm's policy and obligated the insurer to pay damages " 'for any claim or suit covered under this policy for bodily injury or property damage for which any insured person becomes legally liable through *the ownership, maintenance or use of* the insured boat.' " (*Id.* at p. 811, italics added.)

Mr. Peters tried mightily, but unsuccessfully, to argue the causal connection between the use of his yacht and the herpes. He claimed his yacht was a sign of wealth and status, which fostered romance and sexual conduct. Neither the trial nor appellate court bought it. They concluded the use of the yacht was incidental to the claimant's injury, which could have been transmitted just as easily elsewhere. (*Peters v. Firemen's Ins. Co., supra*, 67 Cal.App.4th at p. 814.) Similarly, the discussion of the rental property was only incidental to the defamation action brought against the Turners.

The Turners place great stock in *Melugin v. Zurich Canada* (1996) 50 Cal. App.4th 658 [57 Cal.Rptr.2d 781]. In that case, the insuring clause of a CGL policy provided: " 'The Insurer agrees to pay on behalf of the Insured all sums which the Insured shall become obligated to pay as damages . . . because of: [¶] A. Bodily Injury (as defined herein) . . . ; [¶] B. Personal Injury (as defined herein) . . . .' " (*Id.* at pp. 662-663.) The policy defined the term "Personal Injury" to include " 'discrimination, . . . violation of civil rights, . . . [and] sexual discrimination, . . .' " but provided that " 'damages based on the above offences [*sic*] are only covered where insurance against same is not prohibited by law.' " (*Id.* at p. 663, italics omitted.) When the insured company requested the defense of a sexual discrimination lawsuit, the insurer denied it. Most of the *Melugin* opinion is devoted to addressing whether or not Insurance Code section 533 bars such coverage. The appellate court reversed the trial court's grant of summary judgment in favor of the insurance company, stating it was obligated by its policy to defend appellants.

The coverage provided in the insuring clause of the *Melugin* policy was much broader and comprehensive than the instant coverage. The critical causal connection language "which arises from the ownership, maintenance, or use of the insured premises" was absent from the *Melugin* policy.

Obviously, it would be difficult to craft a rule regarding causal connections that would apply in every case. But general parameters can be laid. When a rental dwelling policy affords coverage for damages because of personal injury caused by an occurrence, and which arises from the ownership, maintenance or use of the insured premises, the occurrence must be logically and more than incidentally or parenthetically connected to such ownership, maintenance or use.

The Turners' slanderous statements could have occurred after an argument about anything. The topic of the argument was merely incidental to the

police being called. It was the gun and the irrationality that required police involvement. They had also been called to the home the previous year when the couple was arguing. The need for police involvement just happened to have arisen on this occasion after the Turners had argued about the rental property. But the breaks in the causal connection multiplied. It was some-time after Mrs. Turner was interviewed at the scene, arrested, transported to jail and booked that the first slanderous statement was spoken. By that time the argument over the rental property was history.

There is no potential for coverage under the Turners' insurance policy with State Farm. Accordingly, no duty to defend ever arose.

*No exclusion in policy*

The Turners next argue an insurance company may not restrict coverage by an unwritten interpretation which if allowed would have the same effect as a written exclusion. Since the policy had no written exclusion of coverage regarding an action "which grew out of a verbal dispute between their Insureds or a Libel and Slander suit by a police officer," the Turners argue there was a duty to defend. Such reasoning is circular. ■ " '[W]hen an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.' [Citation.]" (*American Internat. Bank v. Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1575 [57 Cal.Rptr.2d 567].)

*Bad faith*

Lastly, the Turners contend that State Farm acted in bad faith when it refused to defend them in the defamation action. ■ But a prerequisite to the implied covenant of good faith and fair dealing is a potential for coverage. Since, as discussed above, there is no such potential in this situation, there can be no breach of the implied covenant. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

III

DISPOSITION

The Turners' first amended complaint demonstrates neither coverage nor the potential for coverage under the rental dwelling policy. State Farm had

no duty to defend the deputy's defamation action and did not act in bad faith. The judgment is affirmed. State Farm shall recover its costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.