[No. D026069. Fourth Dist., Div. One. Nov. 12, 1997.]

CHARLES I. FEURZEIG et al., Plaintiffs and Appellants, v.
INSURANCE COMPANY OF THE WEST, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of part III.

**COUNSEL**

Foley, Lardner, Weissburg & Aronson, C. Darryl Cordero and Shana T. Torem for Plaintiffs and Appellants.

Alan H. Lazar for Defendant and Respondent.

**OPINION**

**McDONALD, J.**—Charles I. Feurzeig (Feurzeig) was named as a cross-defendant in a third party lawsuit, and demanded that respondent Insurance Company of the West (ICW) defend and indemnify him under an insurance policy issued to PVCC, Inc. (PVCC). ICW refused and, after Feurzeig settled the third party lawsuit, Feurzeig and PVCC (together appellants) filed this action against ICW. The trial court concluded ICW owed no duty to defend or indemnify Feurzeig because it found the cross-complaint against Feurzeig did not allege a claim covered or potentially covered by ICW's policy. The trial court also granted summary adjudication in favor of ICW on appellants' claim for punitive damages. Appellants timely filed this appeal.

I

FACTS

A. *The Policy*

PVCC was in the business of acquiring, developing and managing commercial and multifamily residential properties. Feurzeig was an officer and director of PVCC.

In May 1991 PVCC purchased an ICW insurance policy which provided general liability coverage. Although the policy and attached endorsements consist of nearly 160 pages, the provisions relevant to this appeal are the (1) "Named Insured" endorsement, (2) "Limitation-Designated Premises" and "Schedule of Premises" endorsements, and (3) "Commercial General Liability" and "General Liability Schedule" endorsements.

1. *The Named Insured Endorsement.*

The policy provided that five entities, including PVCC, were named insureds. PVCC was a corporation and the policy covered Feurzeig as an officer and director of PVCC for liability incurred in those capacities on behalf of PVCC.

2. *The Limitation-Designated Premises and Schedule of Premises Endorsements.*

The Limitation-Designated Premises endorsement limited the general liability coverage by providing: "This insurance applies only to 'bodily injury', 'property damage', 'personal injury', 'advertising injury', and medical expenses arising out of . . . the ownership, maintenance or use of the premises shown in the schedule and operations necessary or incidental to those premises. . . ."

The Schedule of Premises endorsement described the several premises to which the insurance applied. PVCC's offices were in one of the described premises.

3. *The Commercial General Liability and General Liability Schedule Endorsements.*

The Commercial General Liability endorsement provided coverage for advertising injury, including injury from slander.

The General Liability Schedule endorsement contained several columns. One column, labeled "Description of Hazards," contained the statement "Buildings or Premises-Bank or Office-Mercantile or Manufacturing (Lessor's Risk Only) Including Products and/or Completed Operations," and thereafter listed each of the insured premises. A second column, labeled "Code No.," listed 61211 for each of the insured premises.

B. *The Third Party Lawsuit*

During the spring of 1991, PVCC became the manager of four troubled real estate properties (the Trevi properties), which previously had been managed by Messrs. Shakespeare and Sarkisian. As part of PVCC's efforts to salvage the Trevi properties, Feurzeig had numerous conversations at the PVCC offices with lenders, vendors, subcontractors and investors. These

conversations formed the basis for the third party lawsuit. In the fall of 1991, Shakespeare and Sarkisian, in a pending lawsuit against them involving the Trevi properties, filed a cross-complaint against Feurzeig and others, alleging Feurzeig slandered Shakespeare and Sarkisian during Feurzeig's conversations with the lenders, vendors, subcontractors and investors. None of the Trevi properties were listed in the Schedule of Premises endorsement to the ICW policy.

## C. *ICW Rejects Feurzeig's Tender*

In October 1991 Feurzeig provided ICW with a copy of the cross-complaint and demanded that ICW defend and indemnify him under the policy. In November 1991 ICW rejected the tender because neither PVCC nor any of the other named insureds was named as a cross-defendant in Shakespeare and Sarkisian's cross-complaint. In October 1992 Feurzeig settled the third party claims.

In June 1993 Feurzeig renewed his demand that ICW honor its defense and indemnity obligations, and asserted that the third party claims arose out of Feurzeig's actions as an officer of PVCC, a named insured under the policy. In August 1993 ICW again declined coverage.

## D. *The Current Lawsuit*

In 1994 appellants filed the current lawsuit against ICW, alleging contract and tort claims based on ICW's refusal to defend against or indemnify for the third party claims. In pretrial proceedings the trial court bifurcated trial of the duty to indemnify issues from all remaining issues. The trial court also granted ICW's motion for summary adjudication on appellants' claim for punitive damages.

In the ensuing trial the court concluded there was no potential for coverage under ICW's policy because the "Lessor's Risk Only" language limited coverage to PVCC's liability as a lessor of the described premises. Accordingly, the court granted a nonsuit in favor of ICW on the duty to indemnify. The court also reversed an earlier ruling on the duty to defend issue by granting ICW's motion for reconsideration and thereafter granting ICW's motion for judgment on the pleadings in ICW's favor on the duty to defend issue.

## II

### THE COVERAGE ISSUE

A. *The Controlling Issues Are Whether the Designated Premises and Lessor's Risk Only Limitations Clearly Exclude Coverage for the Slander Alleged by Shakespeare and Sarkisian*

It is undisputed that slander liability is covered by the ICW policy and that some or all of the alleged slander took place during the policy period. It is also undisputed that Feurzeig is covered by the ICW policy for slanderous statements made while acting in his capacity as an officer of PVCC. The issue is whether the policy otherwise excludes coverage for the Shakespeare and Sarkisian claims.

ICW argues the policy was intended to and did limit the liabilities for which coverage was provided because an endorsement stated the policy covered Lessor's Risk Only for the described premises, and Feurzeig's slander was not uttered in connection with PVCC's capacity as lessor of the described premises. It follows, ICW argues, there was neither coverage nor a potential for coverage and therefore no indemnity or defense obligation for the Shakespeare and Sarkisian claims.

B. *General Principles of Interpretation*

Our Supreme Court has described the general principles which guide us in interpreting the ICW policy: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (*Id.*, § 1649; [citation].) This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' [Citation.] Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. [Citation.] [¶] In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is

because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' [Citations.]" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], quoting *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920], italics added by *Bank of the West.*)

We are thus required first to attempt to determine the parties' mutual intention solely from the words used in the policy.

C. *The Policy Language Does Not Exclude Coverage for the Torts Alleged by Shakespeare and Sarkisian*

██ ICW argues the facially broad coverage afforded for slander was limited by the Designated Premises and Lessor's Risk Only clauses of the policy. ██ When an insurer wishes to limit coverage the limitation "must be conspicuous, plain and clear." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) A limitation is conspicuous when it is positioned and printed in a form which adequately attracts the reader's attention to the limitation. (*Shepard* v. *CalFarm Life Ins. Co.* (1992) 5 Cal.App.4th 1067, 1080 [7 Cal.Rptr.2d 428].) Moreover, "[c]onspicuous placement of exclusionary language is only one of two rigid drafting rules required of insurers to exclude or limit coverage. The language itself must be plain and clear." (*Jauregui* v. *Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544, 1550 [3 Cal.Rptr.2d 21].) To be plain and clear the limitation should be precise and understandable. (*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 184 [231 Cal.Rptr. 791], disapproved on other grounds in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 52, fn. 14 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

██ ICW urges the term "Lessor's Risk Only" was a limitation which was "conspicuous, plain and clear" because appellants were sophisticated and understood the import of the Lessor's Risk Only limitation. ██ In construing a policy, the courts may consider whether the insured was a sophisticated buyer of insurance represented by a professional broker (*Advanced Micro Devices, Inc.* v. *Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 801 [245 Cal.Rptr. 44]) and whether the parties intended to accord a technical meaning to terms used in a policy (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253]). ██ PVCC was represented by a professional broker, Mr.

Harpe, in negotiating the ICW policy, and PVCC was a sophisticated buyer of insurance.[1]

However, what the parties understood by the Lessor's Risk Only designation under the "Hazards" column of the endorsement is at best ambiguous. The policy itself provides no aid because it does not define the phrase or mention it elsewhere in the policy. We are not aware of any judicial decisions construing the meaning of the Lessor's Risk Only phrase. Based solely on the face of the policy, ICW provided PVCC with coverage for a hazard (slander) arising from the use of the premises, and the Lessor's Risk Only phrase at best creates ambiguity whether the "use of the premises" means "any use" or only "leasing activity use." Under traditional rules of construction, we construe any ambiguity created by this language against the insurer and in favor of coverage. (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822.)

ICW argues, however, the insured is charged with his agent's understanding of the policy and Harpe's testimony admitted the Lessor's Risk Only phrase was intended and understood to mean the policy provided coverage only for liability incurred by PVCC as a lessor for the described premises. Even assuming appellants were bound by Harpe's understanding, ICW's reliance on Harpe's testimony is misplaced.[2] Harpe testified he and Houck understood that the policy was intended to cover only liabilities arising from the use of the described premises. Harpe explained that Lessor's Risk Only was a general description of the class of risk being insured against, that the "rating code" (61211) assigned to the endorsement is derived from an industry manual used to identify the class of risk the policy is designed to cover and corresponds to the Lessor's Risk Only class of hazards, and that

---

[1]Mr. Houck, the PVCC officer negotiating the insurance coverage and dealing with Harpe on deciding which coverages PVCC sought, was a licensed insurance broker.

[2]ICW cites *Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.* (1988) 206 Cal.App.3d 637 [254 Cal.Rptr. 1] as holding that when a policy is ambiguous the insured is bound by his agent's understanding of the policy. However, the passage from *Farm Air* on which ICW relies is dictum because the *Farm Air* court held the exclusion in that case unambiguously eliminated coverage for the claim. (*Id.* at p. 640.) Although the *Farm Air* court thereafter mentioned that the agent also understood the exclusion to eliminate coverage and that his knowledge is imputed to his principal (*id.* at p. 641), this discussion was dictum because the court had already determined the exclusion unambiguously applied.

We question whether an agent's subjective interpretation of policy language is admissible. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3 [6 Cal.Rptr.2d 554] [subjective understanding of contractual language not competent parol evidence].) Indeed, the admissibility of an insurance agent's interpretation of a policy appears inconsistent with the general interpretive rule that policy language is ordinarily given the construction accorded by a layperson rather than the construction accorded by an insurance expert. (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822; *Crane* v. *State Farm Fire & Cas. Co., supra,* 5 Cal.3d at p. 115.)

the ICW policy correctly reflected the limited scope of coverage PVCC sought.

However, Harpe's testimony does not establish that the policy provided no coverage for Feurzeig's slander. The only clear limitation on coverage is the Limitation-Designated Premises endorsement. That endorsement limits general liability coverage to those claims "arising out of . . . the ownership, maintenance or use of the premises shown in the schedule and . . . operations necessary or incidental to those premises. . . ." The claims here were connected with PVCC's "use of" or "operations . . . incidental to" the described premises because PVCC used a portion of the described premises to conduct its general business operations, and some of the alleged slanders occurred in connection with Feurzeig's "use of" those premises to conduct PVCC's business. The court in *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], interpreting the "use of" language in an insurance policy, explained: "Past California cases have established beyond contention that this language of 'arising out of the use,' *when utilized in a coverage or insuring clause of an insurance policy*, has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the [specified instrumentality]. As the Court of Appeal observed in *St. Paul Fire & Marine Ins. Co. v. Hartford Acc. & Indem. Co.* (1966) 244 Cal.App.2d 826, 831 [53 Cal.Rptr. 650]: 'When employed in a public liability policy without restriction, words such as "use" or "using" have comprehensive scope. [Citations.]' " (*State Farm Mut. Auto. Ins. Co. v. Partridge, supra,* at p. 100, original italics.)

Although Harpe agreed that PVCC sought and the policy was intended to provide limited coverage, he did not testify that Feurzeig's slander was outside the scope of the limited coverage.[3]

 Moreover, we must construe the Lessor's Risk Only and 61211 language in its context and in keeping with its purpose for inclusion in the

---

[3]Harpe testified there was a designated premises limitation from which policy limitations flowed, but he could not recall any discussions about the *uses* to which these premises could be put, and he was aware that a use of one of the designated premises was for PVCC's offices. Harpe explained the Designated Premises and Lessor's Risk Only endorsements were to be read together with the other provisions of the policy to determine the coverages afforded. When asked whether the slander coverage would be "limited to Lessor's Risk Designated Premises Exposures," Harpe responded: "If that's what the policy indicated, that's what it would be limited to." In short, Harpe's trial testimony confirms that all parties intended to obtain limited coverage, but it does not support ICW's claim that slander occurring at the designated premises was outside the scope of this limited coverage. ICW also cites Harpe's declaration, submitted in an earlier summary judgment motion, stating he "agreed" with ICW underwriter Pringle's interpretation that the Lessor's Risk Only language limited the scope of coverage the policy afforded to liabilities arising from the insured's capacity as owner or lessor. However, ICW cites nothing to suggest Pringle's testimony was in evidence, or that she was qualified to render the opinion given. Furthermore, ICW does not cite authority

policy, because: "In determining whether coverage is consistent with the objectively reasonable expectations of an insured, 'the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." ' [Citations.]" (*Farmers Ins. Exchange* v. *Knopp* (1996) 50 Cal.App.4th 1415, 1422 [58 Cal.Rptr.2d 331], quoting *Bank of the West* v. *Superior Court, supra*, 2 Cal.4th at p. 1265, italics omitted.)

The extrinsic evidence demonstrated that use of the Lessor's Risk Only and 61211 language had a limited function: to establish a premium and not to form a limitation on coverage beyond the requirement that the covered conduct occur in connection with use of the described premises. Harpe explained that a rating class is a guideline employed by the insurance industry to develop a group of similar type risks for purposes of determining an appropriate premium. Lessor's Risk Only is a rating class, and 61211 is the code number used in the insurance industry to designate the Lessor's Risk Only rating class. The industry publications confirm that the purpose of this classification is to permit lower premiums to be charged to insureds who, having leased some or all of their described premises, are exposed to less risk of loss than if they occupied the entire premises.[4] Although this rating class reflects industry recognition that insureds who lease the bulk of

---

holding that an opinion on the "industry understanding" is admissible when it includes ambiguous language. (See *American Star Ins. Co.* v. *Insurance Co. of the West* (1991) 232 Cal.App.3d 1320, 1330-1332 [284 Cal.Rptr. 45] [policy interpreted according to lay interpretation and not according to how an insurance expert would read it].)

[4] One publication, describing the use of the Lessor's Risk Only rating classification, explains:

"When an organization owns a building and leases a substantial amount of that building to other businesses, the organization's liability exposures arising from that premises are reduced because the tenants will carry liability insurance for their portions of the building [and may have "hold harmless" clauses indemnifying the landlord] . . . .

"In recognition of the reduced exposures associated with these actions, a substantial rate credit is available to insureds who occupy less than 90 percent of an owned building. The portion of the premises occupied by the insured is classified and rated according to the insured's business operations. The remainder of the premises is classified in one of two classification codes: [Code 61211 or 61213, which] [¶] . . . carry a much lower rate than the regular 'buildings or premises' codes." (Gibson & McLendon, Commercial Liability Insurance (International Risk Management Institute, Inc. 1987) *CGL Classification and Ratings Tips*, p. VIII.E.2.)

their premises to third parties have reduced levels of exposure and are therefore entitled to reduced premiums, nothing suggests that selection of the rating classification limits the covered liability to their status as lessors on coverage otherwise afforded by the policy.[5]

Thus, the plain words of the ICW policy cover claims against PVCC for slander provided the slander has the requisite nexus with PVCC's use of the described premises. If ICW wished to exclude coverage for PVCC's non-lessor related liabilities, it should not have included PVCC's corporate offices as an insured described premises. We conclude the Lessor's Risk Only language does not create a limitation on coverage. Because there was a potential for coverage under the ICW policy for slander claims against Feurzeig, ICW owed a duty to defend Feurzeig as an officer or director of PVCC under the policy against the third party claims, and it was error for the court to grant judgment on the pleadings in favor of ICW on the duty to defend issue.

## D. Conclusion

The trial court granted ICW's motion for judgment on the pleadings and motion for nonsuit based on the erroneous conclusion that there was no potential for the third party lawsuit to assert a covered claim because the Lessor's Risk Only language limited coverage to PVCC's liability as a lessor of the described premises. It is necessary to reverse the judgment because we conclude the Lessor's Risk Only language did not limit coverage and there was a potential for coverage if Feurzeig's slanders were uttered as an officer or director of PVCC and arose from PVCC's use of the described premises. Although this potentiality gave rise to a duty to defend Feurzeig, we express no opinion whether on remand ICW can defeat Feurzieg's indemnity claim either by overcoming the presumptions arising from Feurzeig's settlement of the lawsuit (see *Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 527-528 [42 Cal.Rptr.2d 295]) or by establishing an applicable affirmative defense.

III*

. . . . . . . . . . . . . . . . . . . . . . . .

---

[5]The few courts which have evaluated the effect of a "ratings" endorsement to a policy have agreed that, absent express language declaring that the ratings endorsement was intended to limit coverage, the endorsement would not be construed as an additional limitation on coverage. (See *Murry* v. *Bankers Fire & Marine Insurance Company* (La.Ct.App. 1967) 198 So.2d 532, 534-535; *Tufts University* v. *Commercial Union Ins.* (1993) 415 Mass. 844 [616 N.E.2d 68].)

*See footnote, *ante*, page 1276.

## Disposition

The order granting summary adjudication in favor of ICW on appellants' claim for punitive damages is affirmed. The judgment is otherwise reversed and remanded for further proceedings consistent with this opinion. All parties shall bear their own costs on appeal.

Work, Acting P. J., and McIntyre, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 18, 1998.