[No. A125133. First Dist., Div. Five. Mar. 30, 2010.]

LUCIA LOPEZ DOMINGUEZ, Plaintiff and Appellant, v.
FINANCIAL INDEMNITY COMPANY, Defendant and Respondent.

COUNSEL

Law Offices of Matthew R. Stall, Matthew R. Stall and Felipe R. Parker for Plaintiff and Appellant.

Zinder & Koch, Jeffrey E. Zinder and Richard L. Hinson for Defendant and Respondent.

OPINION

BRUINIERS, J.—Appellant Lucia Lopez Dominguez (Dominguez), injured in an automobile accident, brought an action for declaratory relief challenging the enforceability of provisions in an automobile insurance policy limiting liability coverage for permissive users. She appeals an adverse judgment[1] in favor of respondent Financial Indemnity Company (FIC) following a bench trial. We conclude, as did the trial court, that the disputed policy provisions are sufficiently conspicuous, plain and clear and are enforceable. We therefore affirm.

---

[1] After Dominguez appealed from the trial court's "Order After Hearing," the trial court issued a formal "Judgment." We construe the notice of appeal as being from the subsequently rendered final judgment. (Cal. Rules of Court, rule 8.104(e); *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1223, fn. 11 [96 Cal.Rptr.3d 744].)

## I. BACKGROUND

The parties agree that the facts are undisputed. Most of the facts are taken from the parties' written stipulation of facts and from a certified copy of the insurance policy at issue.[2] To the extent any additional factual findings by the trial court are not challenged on appeal, we accept the fact findings set forth in the trial court's "Order After Hearing." (See *City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1322–1323 [24 Cal.Rptr.3d 788].)

On November 2, 2007, Dominguez was the driver of a motor vehicle involved in an accident with a vehicle driven by Janet Ningju Qiu. At the time of the accident, the vehicle driven by Qiu was owned by Michael Welch and insured by FIC. Welch is a named insured under the subject "Family Car Policy" (Policy).[3] Because Qiu was driving Welch's vehicle with Welch's permission, she was an "insured person" as defined by the Policy. Qiu had no separate insurance. On March 19, 2008, Dominguez filed an action in Contra Costa County Superior Court against Qiu and Welch for her injuries arising out of the accident.[4]

On September 16, 2008, Dominguez filed the instant action for declaratory relief due to an actual controversy which arose between the parties "related to the amount of coverage available to pay out any claims asserted in the lawsuit by Dominguez against Welch and Qiu for Dominguez's injuries arising out of the Accident." (Boldface omitted.) The parties stipulated that Dominguez was a proper party plaintiff in the instant action.[5]

---

[2] Preliminarily, we note that FIC's brief asserts that prior to trial the parties entered into a written stipulation of additional facts, which the brief recites. However, because FIC's brief fails to provide a citation to the appellate record for these facts, we do not consider them. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1 [19 Cal.Rptr.3d 84].)

[3] The Policy is a company form ("California Family Car Policy—form U-622 (09/04)") for California automobile coverage. Policies are usually issued on standard forms. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶¶ 3:35, 3:69 (rev. # 1, 2009).)

[4] That action was pending at the time the instant action was tried and is not at issue in this appeal.

[5] Dominguez is obviously a stranger to the contract of insurance. Although Insurance Code section 11580, subdivision (b)(2) provides for direct action against an insurer by a judgment creditor of the insured on a claim covered by the policy, Dominguez has no such standing. Nevertheless, our Supreme Court appears to have at least implicitly endorsed, albeit without discussion or analysis, the declaratory relief procedure utilized here. (See *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381] (*Haynes*).)

*The Policy*[6]

The first page of the two-page "**California Private Passenger Auto Policy Renewal Declarations**" (declarations) provides the insured's (Welch's) name and address, the policy and renewal policy numbers, the insurance broker's name and contact information, and identifies Welch as a "Driver." It also states, "**Endorsements Attached to Policy at Date of Issue** [¶] U-622 (09/04) California Family Car Policy."[7] The second page of the declarations includes a description of the insured vehicle and under "**Part A - Liability Coverage**" provides the following coverage limits: $100,000 for "**each person**" and $300,000 for "**each accident**" for bodily injury, and $50,000 for property damage for "**each accident.**"

The face sheet on page 1 of the Policy states, in relevant part: "**This is your** [¶] **FAMILY CAR POLICY** [¶] **CALIFORNIA** [¶] **IMPORTANT NOTICE** [¶] . . . [¶] **See Reduction in Coverage - Page 7 & 11** [¶] **This policy may have restrictive endorsements attached. If so, please read them carefully. If you have any questions regarding their effect on your coverage, contact your agent for further explanation. These policy provisions with the Declarations Page and any Endorsements, complete this policy.**" "U-622 (09/04)" appears in the lower left-hand corner of the face sheet.

On page 2, the Policy's "**TABLE OF CONTENTS**" includes the following: "**Liability Coverage** [at page] 4 [¶] **Important** see **Reduction in Coverage** [at page] 7. . . ."

The Policy's "**AGREEMENT**" section (on pp. 3 and 4) provides: "**We** agree with **you** in return for **your** premium payment, to insure **you** subject to all the terms of this policy. **We** will insure you for the coverages and the limits of liability for which premium is shown in the Declarations of this policy. *The limits shown on the Declarations page are subject to reduction to the state mandatory minimum of $15,000 each person, $30,000 each accident, and $5,000 for property damage, when there is a permissive user of the 'insured vehicle.'* For accidents occurring outside of California, the reduced limits will be equal to the minimum limits required by that states [*sic*] Financial Responsibility Laws. [¶] **Definitions Used Throughout This Policy** [¶] As used throughout this policy and shown in bold print: [¶] **1[.]** '**We**', '**us**' and '**our**' mean the Company providing this insurance. [¶] **2[.]** '**You**' and '**your**' mean the Policyholder named in the Declarations

---

[6] All boldface in Policy quotations appears in the original.

[7] Although the declarations refer to the California Family Car Policy as an "endorsement," the California Family Car Policy forms the basis of the Policy together with the declarations. The parties do not construe it as an endorsement and neither do we.

and spouse or **registered domestic partner** if living in the same household. [¶] . . . [¶] **5[.]** **'Your insured car'** means: [¶] **a[.]** Any vehicle shown in the Declarations. . . ." (Italics added.)

The Policy section entitled "**PART I - LIABILITY**" (on pp. 4 and 5) provides, in relevant part: "**Additional Definitions Used in This Part Only** [¶] As used in this Part: [¶] **1[.]** **'Insured person'** or **'Insured persons'** mean: [¶] **a[.]** **You** or a **relative.** [¶] **b[.]** Any person using **your insured car. (subject to reduction, see page 7)** [¶] **c[.]** Any other person or organization with respect only to legal liability for acts or omissions of: [¶] **(1)** any person covered under this Part while using **your insured car; (subject to reduction, see page 7)** . . . ."

At the top of page 7, the Policy provides: "**Conformity With Financial Responsibility Laws** [¶] When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law. Any coverage provided under this provision, which is broader than the coverage otherwise provided under this Part, will be excess over any other valid and collectible insurance."

At the middle of page 7, the Policy provides: "**REDUCTION IN COVERAGE** [¶] If this policy provides coverage that exceeds the minimum limits required by the applicable Financial Responsibility Law of the State of California, or the state in which the accident occurs, then such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of **your insured car** is by a person other than **you**, a **relative**, and an agent or employee of **you** or a **relative** in the course and scope of their agency or employment. However, this limitation/reduction does not apply to any liability incurred by **you** or a **relative**."[8]

The issue in dispute at trial was the enforceability of the Policy's "stepdown" provisions,[9] which reduced its bodily injury liability limits from

---

[8] Page 11 of the Policy contains a similar "**REDUCTION IN COVERAGE**" provision applied to the Policy "**UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGE.**" This reduction in coverage provision states: "If this policy provides coverage that exceeds the minimum limits required for **Bodily Injury** by the applicable Financial Responsibility Law of the State of California, then such coverage that is in excess of the minimum, shall not apply to a loss where the operation, maintenance or use of **your insured car** is by a person other than **you** or a **relative**, an agent or employee of **you** or a **relative** in the course an [sic] scope of their agency or employment. However, this limitation/reduction does not apply to a liability incurred by **you** or a **relative**." This reduction in coverage provision is inapplicable here and we need not consider its enforceability.

[9] Such provisions, which reduce the amount of coverage afforded to permissive users to a stated limit of liability, are common in automobile liability policies. (See Annot., Validity and Operation of "Step-Down" Provision of Automobile Liability Policy Reducing Coverage for

$100,000/300,000 to the statutory minimum of $15,000/30,000[10] for certain permissive users. The trial court concluded that those provisions are "sufficiently conspicuous, plain and clear as to be enforceable." We agree.

## II. DISCUSSION

### A. *Standard of Review*

Where, as here, the material facts are not in dispute our interpretation of the subject policy presents solely a question of law. (*Haynes, supra,* 32 Cal.4th at p. 1204; *Garamendi v. Mission Ins. Co.* (2005) 131 Cal.App.4th 30, 40 [31 Cal.Rptr.3d 395].)

### B. *Applicable Legal Principles*

"The interpretation of an insurance policy corresponds to the interpretation of contracts generally. The parties' mutual intention when they form the contract governs interpretation; '[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' [*Citation.*][11] 'If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language "is clear and explicit, it governs." [Citation.] [¶] When interpreting a policy provision, we must give its terms their " 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " [Citation.] We must also interpret these terms "in context" [citation], and give effect "to

Permissive Users (1995) 29 A.L.R.5th 469.) The reasons for inclusion of such provisions are readily apparent. Auto insurance premiums are determined in two stages: including a base rate for a particular type of coverage which is the same for each policyholder, and applying a series of "rating factors" for each policyholder which determine how much the policyholder is charged. (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1186 [103 Cal.Rptr.2d 75].) Those individualized rating factors include driving safety record, annual miles driven, years of driving experience and other factors which have a substantial relationship to the risk of loss. (*Id.* at p. 1187; Ins. Code, § 1861.02, subd. (a); Cal. Code Regs., tit. 10, § 2632.5.) Such factors obviously cannot be determined for an unknowable universe of permissive users or factored into the premium charged to the insured.

[10] "No policy or bond shall be effective under Section 16054 unless issued by an insurance company or surety company admitted to do business in this state by the Insurance Commissioner, except as provided in subdivision (b) of this section, nor unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to that limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to, or destruction of property, to a limit of not less than five thousand dollars ($5,000) because of injury to or destruction of property of others in any one accident." (Veh. Code, § 16056, subd. (a).)

[11] Insertions added by this court are placed in brackets and italicized to distinguish them from the bracketed insertions appearing in the original material.

every part" of the policy with "each clause helping to interpret the other." '
[*Citation.*] ■ 'A policy provision will be considered ambiguous when it
is capable of two or more constructions, both of which are reasonable.
[Citation.] But language in a contract must be interpreted as a whole, and in
the circumstances of the case, and cannot be found to be ambiguous in the
abstract.' [*Citation.*] [¶] 'On the other hand, "[i]f the terms of a promise are
in any respect ambiguous or uncertain, it must be interpreted in the sense in
which the promisor believed, at the time of making it, that the promisee
understood it." [Citations.] This rule, as applied to a promise of coverage in
an insurance policy, protects not the subjective beliefs of the insurer but,
rather, "the objectively reasonable expectations of the insured." [Citation.]
Only if this rule does not resolve the ambiguity do we then resolve it against
the insurer.' [*Citation.*]" (*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*
(2007) 147 Cal.App.4th 137, 146 [53 Cal.Rptr.3d 786].) "The policy should
be read as a layman would read it and not as it might be analyzed by an
attorney or an insurance expert. [Citation.]" (*Crane v. State Farm Fire & Cas.
Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129].)

■ Special rules of construction and interpretation apply to enforcement
of clauses which are exclusions from coverage. (*Ponder v. Blue Cross of
Southern California* (1983) 145 Cal.App.3d 709, 718–720 [193 Cal.Rptr.
632].) In general, provisions relating to exclusions from coverage must be
" 'conspicuous,' " that is "placed and printed so that [they] will attract the
reader's attention"; and must be " 'plain and clear' "—i.e., "stated precisely
and understandably, in words that are part of the working vocabulary of the
average layperson. [Citations.]" (*Haynes, supra*, 32 Cal.4th at p. 1204.) It is
the insurer's burden to make its coverage exclusions and limitations con-
spicuous, plain and clear. (*Ibid.*)

■ In construing an automobile policy's permissive user limitations, we
examine the reasonable expectations of the insured car owner, not the
reasonable expectations of the permissive user who was involved in the
accident. (*Haynes, supra*, 32 Cal.4th at pp. 1213–1215.)

C. *Enforceability of the Provisions Reducing Coverage for Permissive
    Users*

■ California's financial responsibility law (Veh. Code, § 16000 et seq.)
requires "owners and operators of automobiles 'to be "financially respon-
sible" (usually by means of insurance) for any' bodily injury or property
damage that they may cause. [Citation.] . . . [I]ts primary purpose . . . is to
assure compensation for persons who have suffered injury or damage of this
sort. [Citations.]" (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th
332, 341 [79 Cal.Rptr.2d 308, 965 P.2d 1178], italics omitted.) As noted

previously, minimum limits for insurance coverage are specified in Vehicle Code section 16056, subdivision (a), and require not less than $15,000 liability coverage for bodily injury to or death of one person in any one accident. The same minimum limits are incorporated in Insurance Code section 11580.1, subdivision (b)(1), mandating that automobile liability insurance policies issued in California provide at least that amount of coverage.[12] Insurance Code section 11580.1, subdivision (b)(4) provides that, subject to certain exceptions, to the extent that insurance is afforded to the named insured, the same coverage must be provided to a permissive user,[13] but expressly limits that requirement to the limits imposed by the financial responsibility law, as incorporated in Insurance Code section 11580.1, subdivision (a).

■ Subdivision (a) of Insurance Code section 11580.1, read in conjunction with subdivision (b)(4), "means that the insurer and the named insured are empowered to provide in the insurance policy that permissive users will be provided only with the minimum statutory coverage."[14] (*National Indemnity Co. v. Manley* (1975) 53 Cal.App.3d 126, 133 [125 Cal.Rptr. 513].) However, because a reduced coverage provision is a limitation or partial exclusion on coverage (see *Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544, 1551–1552 [3 Cal.Rptr.2d 21] (*Jauregui*)), it " 'is subjected to the closest possible scrutiny' [citation]." (*Haynes, supra*, 32 Cal.4th at p. 1212.)

### 1. *The Permissive User Coverage Limitations Are Conspicuous*

■ " 'A [coverage] limitation is conspicuous when it is positioned and printed in a form which adequately attracts the reader's attention to the

[12] "(a) No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). However, none of the requirements of subdivision (b) shall apply to the insurance afforded under the policy (1) to the extent that the insurance exceeds the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, or (2) if the policy contains an underlying insurance requirement, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code. [¶] (b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions: [¶] (1) Coverage limits not less than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code." (Ins. Code, § 11580.1, subds. (a), (b)(1).)

[13] A permissive user is any person who uses an insured vehicle with the express or implied permission of the named insured, provided the use is within the scope of the permission. (§ 11580.1, subd. (b)(4).)

[14] An automobile owner's liability for injuries caused by a permissive user is similarly statutorily limited to $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 per occurrence for property damage. (Veh. Code, § 17151.)

limitation. [Citation.]' [Citation.]" (*Thompson v. Mercury Casualty Co.* (2000) 84 Cal.App.4th 90, 95 [100 Cal.Rptr.2d 596], first citation omission in original; accord, *Haynes, supra,* 32 Cal.4th at p. 1204.)

In *Haynes* our Supreme Court considered the enforceability of step-down coverage limitations contained in a form "E-Z Reader Car Policy" issued by Farmers Insurance Exchange. As here, the declarations page of the policy set forth only the greater policy limits provided to the named insured (bodily injury limits of $250,000 per person and $500,000 per accident in that case). (*Haynes, supra,* 32 Cal.4th at p. 1202.) The only reference in the body of that policy to a lesser amount of coverage was contained in a section captioned "LIABILITY," under the subheading " 'Other Insurance,' " which advised that, for " 'an insured person, other than you or a family member,' coverage is provided 'up to the limits of the Financial Responsibility Law only.' " (*Id.* at p. 1203.) The court found this language not to be conspicuous, plain and clear, stating that "[t]here is nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language." (*Id.* at p. 1205.) The court cited with approval the holding of the Court of Appeal in *Jauregui, supra,* 1 Cal.App.4th 1544, finding an identical limitation on permissive user coverage " 'inconspicuous and vague.' " (*Haynes,* at p. 1205.)

Farmers disclaimed reliance on this permissive user limitation and instead argued that a limitation contained within a form endorsement to the policy defeated any reasonable expectation by the policyholder of higher coverage limits. The endorsement appeared on the 24th page of the policy, with the permissive user limitation presented in three lines of ordinary type, "in the least conspicuous position on the page." (*Haynes, supra,* 32 Cal.4th at p. 1209.) "[B]urying the permissive user limitation among such provisions renders it inconspicuous and potentially confusing to the average lay reader." (*Ibid.*) The court held that this coverage limitation, which unlike the limitation in the body of the policy, did specify the monetary limitations of the coverage,[15] was not enforceable, since the limitation was not " 'positioned in a place and printed in a form which would attract a reader's attention.' " [Citation.]" (32 Cal.4th at pp. 1207–1208.)

Because the insurer in *Haynes* included " '[a]ny person using your insured car' within its definition of 'Insured person,' " it raised "a reasonable expectation that permissive user coverage would be coextensive with that for

---

[15] The relevant portion of the policy endorsement in *Haynes* provided: " 'We will provide insurance for an Insured person, other than you, a family member or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage.' " (*Haynes, supra,* 32 Cal.4th at p. 1203.)

other insureds." (*Haynes, supra*, 32 Cal.4th at p. 1213, original brackets.) " 'Having created a reasonable expectation of coverage for permissive users coextensive with that of the named insured, defendant was required to cast coverage restrictions in plain and clear language which was conspicuously displayed.' [Citation.]" (*Id.* at p. 1215.) The court found that "Farmers' unadorned alphanumeric reference to endorsement S9064 on the declarations page is 'ineffective in alerting the reader to the important limitations contained on [a] back page of the policy.' [Citation.] 'The exclusionary clause . . . upon which the insurance company relies, is an unexpected one.' [Citation.]" (*Id.* at p. 1211.)

Unlike the "E-Z Reader Car Policy" examined in *Haynes*, the insured is here notified early and often that coverage limits exist in the Policy. On the face sheet of the Policy and on page 2, in the table of contents, the insured is notified that there is a reduction in coverage. Finally, on pages 4 and 5 of the Policy, under "**PART I - LIABILITY**," as part of the definition of "**Insured person**" it is noted twice that while any person using the insured vehicle is covered, this coverage is "**subject to reduction**."

Each one of these reduction notices directs the insured to page 7.[16] The permissive user limitation language on page 7 appears within the "Liability" section of the Policy, is placed immediately following sections on "**Exclusions**" and "**Limits of Liability**" and is set off under a "**REDUCTION IN COVERAGE**" heading whose typeface is both bolded and capitalized. Dominguez concedes that the reduction in coverage language on page 7 is conspicuous.

Dominguez contends, however, that the limitation for permissive users contained on page 3, which delineates the dollar amounts of that reduced coverage, is not conspicuous. We disagree. It is true that where the Policy (in four different locations) directs the policyholder to the location of a coverage reduction, each such reference specifies page 7, but not page 3. Nevertheless, the limits of coverage in this Policy are explicitly set forth within the *insuring clause* of the Policy, which is contained at pages 3 and 4. The insuring clause is placed at the outset of the body of the Policy, is captioned "**AGREEMENT**," and provides in pertinent part "**We** agree with **you** in return for **your** premium payment, to insure **you** subject to all the terms of this policy. **We** will insure you for the coverages and the limits of liability for which premium is shown in the Declarations of this policy. The limits shown on the Declarations page are subject to reduction to the state mandatory minimum of $15,000 each person, $30,000 each accident, and $5,000 for property damage, when there is a permissive user of the '**insured vehicle**.' "

---

[16] One of the notices also directs the reader to page 11. (See fn. 8, *ante*.)

■ "An insuring clause is. the foundation of the agreement and forms the basis for all obligations owed to the insured." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 3:71, p. 3-18 (rev. # 1, 2009).) "[A] policy is written in two essential parts: the insuring agreement, which states the risk or risks covered by the policy, and the exclusion clauses, which remove coverage for risks that would otherwise fall within the insuring clause. [Citation.] . . . '. . . ". . . [W]hen an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded." ' [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "Most exclusions limit the scope of coverage an insured would reasonably expect; the requirement they be conspicuous and clear is intended to protect the insureds from unexpected and unreasonable denials of coverage. [Citation.]" (*TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 760 [40 Cal.Rptr.3d 528].)

Whether or not we consider the lower coverage limitations provided for permissive users to be an "exclusion" under these circumstances, the specification of the limits of coverage in the insuring agreement which defines the coverage is necessarily "conspicuous" and precludes any reasonable expectation by the insured that a permissive user of the insured vehicle would have liability coverage greater than $15,000 per person, or $30,000 per occurrence. We still assume that the insured reads the policy. (*Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578–579 [209 Cal.Rptr. 781] [insured has a duty to read the policy and is bound by all of its conspicuous, plain, and clear provisions].) Recognizing that " ' "[i]t is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies . . ." ' " (*Haynes, supra*, 32 Cal.4th at p. 1210), we are not prepared to say that an insured is not at minimum expected to read the basic insuring agreement defining the scope of coverage the insured will receive in exchange for the premium paid.

The Policy here does not fail " 'to alert a policyholder to limitations on anticipated coverage by hiding the disfavored language in an inconspicuous portion of the policy.' " (*Haynes, supra*, 32 Cal.4th at p. 1211, quoting *Jauregui, supra*, 1 Cal.App.4th at p. 1550.) Placement of the lesser coverage limits within the insuring agreement on page 3, particularly in combination with the multiple emphasized references to coverage limitations on the face page, table of contents, and page 7 of the Policy, conspicuously advise the insured that the coverage limits for a permissive user of the insured vehicle are *not* coextensive with his or her own, and explicitly tells the policyholder what those limits are.

## 2. The Permissive User Coverage Limitations Are Plain and Clear

Dominguez focuses on the coverage limitation language on page 7 of the Policy, which provides that where coverage otherwise exceeds the minimum limits required by California's "Financial Responsibility Law," "then such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of **your insured car** is by a person other than **you**, a **relative**, and an agent or employee of **you** or a **relative** in the course and scope of their agency or employment. However, this limitation/reduction does not apply to any liability incurred by **you** or a **relative**." In reliance on *Jauregui, supra*, 1 Cal.App.4th at pages 1551–1552, Dominguez argues that this language is not plain and clear. We disagree.

In *Jauregui*, the Third District Court of Appeal disapproved policy language which merely incorporated reference to the financial responsibility law, since it was necessary to look outside the terms of the policy itself to determine the restricted policy coverage limits which would apply. (*Jauregui, supra*, 1 Cal.App.4th at p. 1552.) The court held that "[a]lthough 'Financial Responsibility Law' may be an obvious reference to the Vehicle Code to lawyers and judges, . . . it is too vague to meet the stringent obligation of an insurer to limit coverage in plain and clear language." (*Id.* at p. 1551.)

In the Policy before us it is unnecessary to go outside the document in order to determine the extent of the coverage provided. As we have discussed *ante*, in addition to the repeated references in this Policy to the "Financial Responsibility Law," the insuring agreement on the initial page of the Policy body provides that "The limits shown on the Declarations page are subject to reduction to the state mandatory minimum of $15,000 each person, $30,000 each accident, and $5,000 for property damage, when there is a permissive user of the '**insured vehicle**.' "

The dissent finds this language nonetheless deficient in that the Policy fails to define a "permissive user," citing *Haynes* for the proposition that the term would not necessarily be understood by the average layperson. "Although the term 'permissive user' appears in the title of the endorsement containing the limitation, the term is nowhere defined, neither in the policy nor the endorsement, for the average lay reader. While an attorney or an insurance professional likely could deduce from close examination of the entire document that permissive user refers to 'an insured person, other than you, a family member or a listed driver' (the phrase that appears in the permissive user limitation itself) . . . the average lay reader encountering the term in the title of [the] endorsement . . . would not necessarily understand its significance." (*Haynes, supra*, 32 Cal.4th at p. 1211.) The court in *Haynes* did not, however, rest its decision to invalidate the coverage limitation on this failure,

but rather noted the "confusing language surrounding and introducing the actual text of the permissive user limitation [in the policy endorsement], along with confusing cross-references to other insurance policies Farmers' insured did not possess." (*Id.* at pp. 1211–1212.) The court found that "[c]ombined with Farmers' failure to define 'permissive user,' the repeated cross-references in endorsement S9064 to policies other than the car policy, and the confusing language surrounding and introducing the permissive user limitation, these dual-insertion directions seriously impair the clarity with which the limitation imparts its intended message that some portion or aspect of the insurance provided by the policy is extended 'only up to the minimum required limits of your state's Financial Responsibility Law.' " (*Id.* at p. 1212.)

Here the Policy section entitled "**PART I - LIABILITY**" (on pp. 4 and 5) provides, in relevant part: "**Additional Definitions Used in This Part Only** [¶] As used in this Part: [¶] **1[.] 'Insured person' or 'Insured persons'** mean: [¶] **a [.] You** or a **relative**. [¶] **b[.]** Any person using **your insured car. (subject to reduction, see page 7)** [¶] **c[.]** Any other person or organization with respect only to legal liability for acts or omissions of: [¶] *(1) any person covered under this Part while using* **your insured car;** *(subject to reduction, see page 7)* . . . ." (Italics added.) More importantly, page 7 of the Policy, where the reader is repeatedly directed on this issue provides: "**REDUC-TION IN COVERAGE** [¶] If this policy provides coverage that exceeds the minimum limits required by the applicable Financial Responsibility Law of the State of California, or the **state** in which the accident occurs, then *such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of* **your insured car** *is by a person other than* **you,** *a* **relative,** *and an agent or employee of* **you** *or a* **relative** *in the course and scope of their agency or employment. However, this limitation/reduction does not apply to any liability incurred by* **you** *or a* **relative.**" (Italics added.)

Thus, unlike *Haynes,* the policyholder, in a location that Dominguez acknowledges is conspicuous (p. 7), is advised that coverage no greater than the minimum limits will be provided where the insured vehicle is operated by "a person *other than* **you,** a **relative,** and an agent or employee of **you** or a **relative** in the course and scope of their agency or employment" (italics added), and further that the coverage reduction "does not apply to any liability incurred by **you** or a **relative.**"

■ While the term "permissive user" may not be separately defined in the Policy, we do not believe that a reasonable lay person reading the literal language in subdivision 1b of the "**Additional Definitions**" section of "**PART I**" could reasonably conclude that any person (other than the insured or a relative) "using" the "insured car" would *not* be subject to the reduced

coverage referenced on page 7—unless the reader ignored the other Policy provisions and failed to "see page 7." The insuring document must be construed as a whole, in context, and " ' "cannot be found to be ambiguous in the abstract." [Citations.]' [Citation.]" (*Feurzeig v. Insurance Co. of the West* (1997) 59 Cal.App.4th 1276, 1282–1283 [69 Cal.Rptr.2d 629], italics omitted.) Nor do we agree that a reasonable insured, cognizant of the coverage reduction language on pages 3 and 7, is likely to conclude that anyone operating the insured vehicle, *other than the insured* (or his/her relative), would be provided coverage in excess of the reduced dollar limits of $15,000 per person and $30,000 per occurrence for bodily injury.[17]

### III. Disposition

We find the permissive user liability limitations of the Policy to be conspicuous, plain and clear. We therefore affirm the judgment entered for FIC.

Needham, J., concurred.

**SIMONS, Acting P. J.,** Dissenting.—I respectfully dissent.

*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198 [13 Cal.Rptr.3d 68, 89 P.3d 381] (*Haynes*) is the leading California Supreme Court case on the interpretation of automobile insurance policy provisions limiting the coverage provided to permissive users of the insured vehicle. As the majority recognizes, *Haynes* held that such a coverage limitation is effective only if the applicable permissive user provision was not only conspicuous,[1] but also plain and clear. (*Haynes*, at p. 1211.) In construing the policy before it, *Haynes* determined that laymen do not "necessarily" understand the term "permissive user" unless it is further defined in the policy. (*Ibid.*) *Haynes* also

---

[17] We share the dismay of our dissenting colleague that this Policy, apparently drafted following the *Haynes* decision, still fails to eliminate controversies that could readily have been avoided by simple steps, such as including a definition of the term "permissive user" and/or including the step-down coverage limitations on the declarations page. However, we also note that the Supreme Court itself in *Haynes* observed that it did not "suggest that Farmers necessarily must correct all of the identified deficiencies in order to render a permissive user limitation enforceable in future cases. Nor have we the expertise to dictate the precise wording or placement of such a limitation an insurer must adopt in order to satisfy the established legal standard." (*Haynes, supra,* 32 Cal.4th at p. 1212, fn. 9.)

[1] Because I believe that the reduction in coverage language in the Policy (see maj. opn., *ante,* at p. 392 & fn. 3 [description of the "Policy"]) is not plain and clear, I do not address the question of whether the permissive user language on page 3 of the Policy (hereafter page 3) is conspicuous, except to point out that it is troubling that the Policy repeatedly directs the insured to reduction in coverage language on page 7 of the Policy (hereafter page 7) (and once to p. 11 of the Policy), without ever referring the insured to page 3.

concluded that a statement that insurance coverage for permissive users is limited to that required by the "Financial Responsibility Law" is insufficient to notify the insured of the dollar limits resulting from that reduction in coverage. (*Id.* at p. 1205, citing *Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544, 1547 [3 Cal.Rptr.2d 21] (*Jauregui*).)

*Haynes* concluded its discussion of the plain and clear requirement with a footnote that frames the analysis in this case: "We do not . . . suggest that [the insurer] necessarily must correct all of the identified deficiencies in order to render a permissive user limitation enforceable in future cases. Nor have we the expertise to dictate the precise wording or placement of such a limitation an insurer must adopt in order to satisfy the established legal standard. Indeed, 'we do not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose.' [Citations.] There may be a number of ways for [the insurer] to correct the problem." (*Haynes, supra*, 32 Cal.4th at p. 1212, fn. 9.) Respondent Financial Indemnity Company concedes that the Policy was drafted post-*Haynes* to comply with the requirements set forth in that case regarding a coverage reduction for permissive users. Has respondent succeeded in that task? I would conclude it has not and reverse.

Respondent and the majority rely principally on the reduction in coverage language on page 3 and page 7. When an insurer wishes to limit coverage, " '[t]he language itself must be plain and clear. [Citation.] "This means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required." ' " (*Haynes, supra*, 32 Cal.4th at p. 1211, fn. omitted, quoting *Jauregui, supra*, 1 Cal.App.4th at p. 1550.)

The coverage limitation on page 7 states that if the Policy "provides coverage that exceeds the minimum limits required by [California's] Financial Responsibility Law," "then such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of **your insured car** is by a person other than **you**, a **relative**, and an agent or employee of **you** or a **relative** in the course and scope of their agency or employment. However, this limitation/reduction does not apply to any liability incurred by **you** or a **relative**." In *Jauregui*, the policy stated, " 'We will provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only.' " (*Jauregui, supra*, 1 Cal.App.4th at p. 1547.) The Court of Appeal determined that the average policyholder could not be expected to know that the Financial Responsibility Law provided limits of $15,000 per person or that the Financial Responsibility Law is contained within section 16000 et seq. of the Vehicle Code; therefore, the permissive user limitation was not plain and clear. (*Jauregui*, at pp. 1551–1552.)

The reduction in coverage language on page 7 is different, but not any more plain and clear, than the reduction in coverage language in *Jauregui*. The majority says the ruling in *Jauregui* rested on the fact that "it was necessary to look outside the terms of the policy itself to determine the restricted policy coverage limits which would apply. (*Jauregui, supra,* 1 Cal.App.4th at p. 1552.) . . . [¶] In the Policy before us it is unnecessary to go outside the document in order to determine the extent of the coverage provided." (Maj. opn., *ante,* at p. 401.) It then distinguishes *Jauregui* by focusing on the language in the Policy's insuring agreement on page 3 in an attempt to bolster its conclusion that the Policy's permissive user coverage reduction limitation is enforceable.

However, the majority's attempt to distinguish *Jauregui* and find the limitation language plain and clear is inadequate under *Haynes*. If, on page 7, the Policy set out the dollar limits imposed on the coverage of permissive users by the Policy's reference to the Financial Responsibility Law or referred the insured to some other Policy provision (for example, p. 3) that provided this explanation, it would clearly pass the *Haynes* test. But page 3 and page 7 do not cross-reference each other. A reasonable insured, aware of the language on page 3 and page 7, would not likely conclude that the reduction in coverage language on page 7 defines a "permissive user," since the reduction in coverage language on page 7 does not utilize that term. And, a reasonable insured is not likely to conclude that the dollar limits, which appear on page 3, refer to the California Financial Responsibility Law, since the page 3 language does not refer to that statute.

Moreover, the reduction language in the insuring agreement on page 3, itself, is not plain and clear. It provides: "The limits shown on the Declarations page are subject to reduction to the state mandatory minimum of $15,000 each person, $30,000 each accident, and $5,000 for property damage, when there is a permissive user of the **'insured vehicle'**." This provision clearly sets out the dollar limitations imposed on coverage for *permissive users*, but, as *Haynes* explains, the italicized term would not necessarily be understood by the average layperson. "Although the term 'permissive user' appears in the title of the endorsement containing the limitation, the term is nowhere defined, neither in the policy nor the endorsement, for the average lay reader. While an attorney or an insurance professional likely could deduce from close examination of the entire document that permissive user refers to 'an insured person, other than you, a family member or a listed driver' (the phrase that appears in the permissive user limitation itself) . . . , the average lay reader encountering the term in the title of [the] endorsement . . . would not necessarily understand its significance." (*Haynes, supra,* 32 Cal.4th at p. 1211.) As in *Haynes*, "permissive user" is not defined anywhere in the Policy.

The majority correctly notes that *Haynes*'s conclusion that the permissive user provision lacked clarity stemmed not only from the failure to define that term but from other factors as well. (Maj. opn., *ante*, at pp. 401–402.) But although the Policy improves upon the language in the *Haynes* policy, it is still not plain and clear and, therefore, it is unenforceable.

Respondent, the Policy's drafter, is not held to a standard of perfection. But it is not enough that respondent wrote a policy that is better than the policies in *Haynes* and *Jauregui*. Respondent could have placed the applicable dollar reduction in coverage on the declarations page, but did not. Respondent could have spelled out the dollar limitations in California's Financial Responsibility Law referred to on page 7 or defined "permissive user" in the Policy, but did not. Respondent could have provided the insured some express link between the provisions on page 3 and page 7, but did not. Or it could have selected "a[ny] number of ways . . . to correct the problem" *Haynes* identified (*Haynes, supra,* 32 Cal.4th at p. 1212, fn. 9), but did not. I would reverse and oblige it to try again.